JAMES M. SULLIVAN, ADMINISTRATOR, vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Second Judicial District, Norwich, May Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, JS.

Upon a hearing in damages after a voluntary default in an action of negligence, the defendant assumes the burden, either of disproving the negligence alleged or of proving contributory negligence upon the part of the plaintiff; and unless the facts duly found demand, as matter of law, a different conclusion from that rendered by the trial court, its judgment must stand.

The facts as found in the present case reviewed and *held* not to be necessarily and as matter of law inconsistent with the conclusion reached by the trial court.

Argued May 31st—decided October 4th, 1900.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to the Superior Court in New London County and heard in damages to the court, *Thayer, J.;* facts found and judgment rendered for the plaintiff for $1,500, and appeal by the defendant for alleged errors in the rulings and findings of the court.  *No error.*      .

It appeared from the finding that an east-bound freight train of the defendant arrived at Hampton station at about six o'clock in the evening of the 28th of October, 1898, three hours late, and that being in need of water the train was run upon a siding south of the main double track and west of a highway crossing which was sixty feet west of the station, and the locomotive having been detached from the train was, by direction of the train-despatcher at Boston and of the conductor, run on the south or east-bound track to Elliot's station, five miles east of Hampton station, where, having taken a supply of water, it was backed west on the same track to its train west of Hampton station. Ordinarily, trains running west take the north track.

There were upon the locomotive the engineer and fireman and a brakeman. When they returned it was very dark, and a trainman's lantern showing a white light, such as is ordinarily used for that purpose, was hung upon the rear of the tender about four feet from the ground. It is found that this was a proper light if the locomotive had been properly operated and a proper lookout kept, but that it illuminated a radius of but a few feet, and did not serve the purpose of a reflector, and the tender shut off the view of the persons in the cab of the engine of the space illuminated by the lantern. Such a light could ordinarily be seen for the distance of nearly a mile, but a curve and an intervening hill prevented any kind of a light from being seen from Hampton station for more than a third of a mile. While so backing no lookout was placed at the rear of the tender. The engine approached Hampton station at a speed of about twelve miles an hour, its speed decreasing as it neared its train west of the crossing, and the whistle was blown at the whistling post,

and the bell rung for the Hampton station crossing. It reached Hampton station on its return about five minutes before seven. A west-bound passenger train reached the station at about the same time. No evidence was offered of the rules of the company for the operation of a locomotive under the above circumstances, nor did it appear whether they had any or whether they were complied with.

When the locomotive was being coupled to its train, the hat of Gallivan, the plaintiff's intestate, was found on the rear of the tender, and as the engine was run east of the station the second time in moving up and back on the main track to take out certain cars, Gallivan was found about thirty feet east of the station, lying between the east and west-bound tracks, severely injured, from which injuries he subsequently died. "This was the first that any of the men on said engine knew that they had struck or run over said Gallivan."

Gallivan was employed by the defendant as a section foreman, and as such his working hours, as fixed by the roadmaster, who was his superior officer, were from 7:30 A. M. until 5:30 P. M. He returned home from his work on this day before six o'clock, and after supper left his house, which was three-quarters of a mile north from Hampton station, and from which a highway leads to the station, saying he was going to get an oil can and have it refilled. It was a part of his duty when oil was needed, to deliver at the station or on a train an oil can which was kept at a section-house south of the tracks and four hundred and fifty feet east of the station. There was a shorter way than by the road from Gallivan's house to the station and section-house, across the lots to the railroad, east to the station and along the railroad to the station. "This way was frequently used by Gallivan and others, and he took this way on the night in question." It did not appear whether or not Gallivan took the oil can from the section-house.

The court held that upon the facts found it did not appear that the defendant was not guilty of negligence, as charged in the complaint, nor that the plaintiff's intestate was guilty of contributory negligence.

Other material facts appear in the opinion.

*Walter C. Noyes*, for the appellant (defendant).

1. *The questions involved are reviewable.* All the known circumstances surrounding the accident were presented without controversy, and it only remained for the trial court to reach its conclusion upon the facts so shown. These facts and circumstances are fully stated in the record, and the trial court erred in failing to draw therefrom an inference of law favorable to the claims of the defendant. The questions so presented are reviewable. *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 192; *Lawler* v. *Hartford Street Ry. Co.*, 72 id. 80.

2. *The defendant did not fail in the performance of any duty imposed by law.* The duty of a railroad company to persons upon its tracks is not absolute, but depends upon the place and the person. The situation and acts of Gallivan determined the standard of duty which was applicable. He was a section foreman employed by the defendant, and was fatally injured while upon the railroad tracks in the evening, after his day's work was done and after he had been home. It seems certain that he was walking along the tracks when injured; but it is not essential in fixing the defendant's duty whether such was the case or whether, as alleged in the complaint, he was crossing the tracks at Hampton station, which was not a highway crossing or public place. If the relation of master and servant in fact existed at the time of the accident, the complaint claims nothing from that relation. The action in form is that of a stranger. Gallivan was not, in fact, an employé at the time of the accident. When the day's work is completed and the servant has left his place of work, the relation of master and servant ceases for the time being. Wood's Mas. & Ser. § 404; *Washburn* v. *Nashville R. Co.*, 3 Head, 638. Gallivan stood in the relation of a stranger to the defendant at the time of the accident, and the defendant owed him no duty of active vigilance. It was bound to avoid a collision, if possible, after his presence on the tracks was discovered, but as he was not seen before the accident, this obligation never arose. *Nolan* v. *New York, N. H. & H. R. Co.*, 53 Conn. 461; *Felton* v. *Aubrey*,

74 Fed. Rep. 355; *Railroad Co.* v. *Monday*, 49 Ark. 257. Assuming, however, that Gallivan was an employé, or at a public place, the defendant has negatived every sufficient charge of breach of duty in the complaint. The allegation that the engine was running backward does not charge a negligent act. *Swindell* v. *Chicago R. Co.*, 44 Neb. 841; *Carr* v. *No. River Cons. Co.*, 48 Hun, 266. The allegation that the light was not suitable was disproved. The finding states that it was suitable if the engine was properly operated. If improperly operated the negligence would consist therein and not in the use of the light. There is a distinction between the proper use of an improper signal, and the improper use of a proper signal. The charge that no lookout was placed upon the tracks does not charge a breach of duty. No statute, ordinance or rule required such precaution, and the case is clearly distinguishable from those cases where lookouts have been required upon the rear of freight trains backing through city streets. *Loring* v. *K. C. R. Co.*, 128 Mo. 349; *Aerkfetz* v. *Humphreys*, 145 U. S. 419. Moreover, on account of the darkness and rate of speed, the presence of a lookout could not have averted the accident. If, in fixing the defendant's duty, Gallivan is considered an employé, it must be fixed with reference to the principle that a servant assumes the ordinary risks of his employment. Knowing the danger, Gallivan placed himself in a dangerous position and assumed the risk. *Tuttle* v. *Grand Haven R. Co.*, 122 U. S. 195; *Kennedy* v. *Man. R. Co.*, 33 Hun, 457; *Penn. R. Co.* v. *Wachter*, 60 Md. 395; *Rutherford* v. *Chicago R. Co.*, 57 Minn. 237. 3. *Gallivan was guilty of contributory negligence.* The circumstances point to no other possible conclusion than that Gallivan was walking along the track when injured. After his day's work was done he was as a stranger to the defendant, and was walking along the tracks without permission. Even if he was an employé he had no right to use the tracks for his own convenience. As stranger or employé walking upon the tracks without permission, or crossing them other than at a public place, Gallivan was, as a matter of law, guilty of contributory negligence. *Matthews* v. *Phila. R. Co.*, 161 Pa.

St. 28; *Balto. R. Co.* v. *State,* 69 Md. 551; *Norfolk R. Co.* v. *Casper,* 88 Va. 556; *Penn. Co.* v. *Meyers,* 136 Ind. 242; *Toomey* v. *So. Pac. Co.,* 86 Cal. 374; *Patton* v. *E. Tenn. R. Co.,* 89 Tenn. 370. If Gallivan walked along the tracks, or crossed them at any place by permission, no recovery can be had, because he neglected that imperative duty imposed upon travelers, employés and strangers alike, "to look and listen." *Elliott* v. *Chicago R. Co.,* 150 U. S. 245; *Railroad Co.* v. *Houston,* 95 id. 702; *Lynch* v. *Boston & A. R. Co.,* 159 Mass. 536; *Mo. Pac. R. Co.* v. *Moseley,* 57 Fed. Rep. 92; *Lesan* v. *Maine Cent. R. Co.,* 77 Me. 85. The finding shows that the light upon the tender was in plain view, and that the whistles were duly sounded. Gallivan must either have failed to look and listen or have failed to heed the warnings. In either case there can be no recovery. When the unexplained evidence shows that the injured person could have seen an approaching train in time to avoid it if he had looked, the law conclusively presumes that he did not look and did not heed. 2 Shear. & Redf. on Neg. § 476. This principle is especially applicable in the case of deceased persons. *Haetsch* v. *Chicago R. Co.,* 87 Wis. 310; *Myers.* v. *Baltimore R. Co.,* 150 Pa. St. 390; *Hayden* v. *R. Co.,* 124 Mo. 573. 4. *Nominal damages should have been awarded if Gallivan and the enginemen were fellow-servants.* If Gallivan was an employé of the defendant at the time of the accident, the trial court erred in failing to apply the co-employé's rule. Laborers upon the track and train hands are in a common employment. *Northern Pac. R. Co.* v. *Hambly,* 154 U. S. 249. This error of the trial court evidently arose from its opinion that the defendant must be held personally negligent because it had not disproved the allegation that it provided incompetent enginemen. These allegations, however, do not charge personal negligence. Providing incompetent servants may be entirely compatible with proper care in their selection. *Moss* v. *Pacific R. Co.,* 49 Mo. 169. There is, moreover, no negligence in providing or retaining incompetent servants unless the master has notice of their incompetency, and there are no allegations of notice express or implied, in the complaint. *Raiser* v. *Penn. Co.,*

152 Pa. St. 38; *Stevens* v. *Railroad Co.*, 100 Cal. 566; *Tarrant* v. *Webb*, 18 C. B. 797.

*Jeremiah J. Desmond* and *Donald G. Perkins*, for the appellee (plaintiff).

HALL, J. The substance of the reasons of appeal in this case is that the court erred in not holding upon the facts found, either that the defendant was not negligent as alleged in the complaint, or that the plaintiff's intestate was guilty of contributory negligence.

Unless either the absence of such negligence upon the part of the defendant, or the presence of contributory negligence upon the part of the deceased, is a necessary legal inference from the facts of record, the defendant has failed to sustain the burden, assumed by the voluntary default, of either disproving the negligence alleged or of proving contributory negligence. *Lawler* v. *Hartford Street Ry. Co.*, 72 Conn. 74; *Ebert* v. *Hartley*, ibid. 453.

The complaint avers that the defendant negligently backed its engine at great speed from Elliot's station to and by Hampton station, upon the wrong or south track, without providing and placing a suitable light or reflector upon the rear of the tender, and without having a person as a lookout upon the rear of the tender, and without giving any warning of the approach of the engine, and struck the deceased when he was rightfully crossing the defendant's tracks at Hampton station in the exercise of due care.

After the default the defendant gave written notice, as required by statute, that it would disprove the above allegations, would prove contributory negligence, and that the injuries were caused by the negligence of a fellow-servant of Gallivan.

The defendant now asserts that it has performed its undertaking, and that it has proved that the railroad company discharged its full duty toward Gallivan and that Gallivan's own failure to exercise due care essentially contributed to cause his injury.

As to the performance of its own duty the defendant argues that it has proved, first, that it was not negligent in failing to provide a suitable light as alleged, since the court has found that the light used was a proper one; second, that it was not negligent in failing to place a lookout on the rear of the tender, since the facts found show that the lantern used lighted the track for so short a distance, and that the speed at which the engine was moving was so great, and the night so dark, that such a lookout could not have seen sufficiently far along the track to have enabled him either to warn a person upon the track of the approaching engine, or to signal the engineer so that he could either have stopped the locomotive or so slackened its speed as to have avoided the accident; and third, that it has proved facts which show that the standard of duty to be applied to the defendant was only that degree of care which it was required to exercise, in the operation of its engine, toward a person unlawfully and unnecessarily upon its tracks.

As to contributory negligence the defendant claims to have proved facts which show, either that at the time he was struck Gallivan was not crossing the track at Hampton station as alleged, but was upon or dangerously near the track at a point east of the station, or, that if he was crossing the track, he failed to look and listen before going upon the track.

A careful examination of the finding shows that it fails to support the assumptions of fact upon which the defendant's argument rests. Regarding the light used, the court has found that it was a proper one if the locomotive had been properly managed and a proper lookout kept. The court refused to find, unqualifiedly, that a proper light was used. The plain inference from the language of the finding is, that when no lookout is placed upon the tender a trainman's lantern without a reflector, hung upon the back of the tender, is not a sufficient light when an engine upon the track for east-bound trains is backing west, in a dark evening, from one railroad station to another, and over crossings upon which people may be lawfully and properly passing, and when at the same time another train is approaching the same station

and crossings from the same direction upon the other or west-bound track.

Again, it does not appear from the finding that the presence of a lookout upon the tender would not have prevented the accident. The twelve miles an hour speed decreased as the engine approached its train. That it was moving much slower than that before it reached the station or the crossing, does not conflict at all with the finding, and though the lantern upon the tender lighted the track but a few feet, the time required to move that distance may have been sufficient to have enabled a lookout to either warn Gallivan of his danger or to signal the engineer so that he could have prevented the accident.

We cannot, upon the record before us, say that the court erred in refusing to uphold the claim that in the management of its locomotive the defendant owed no duty to the plaintiff's intestate, excepting that which it owed to a person unlawfully upon its tracks.

In their brief, counsel for the defendant say that the allegation of the complaint that Gallivan was struck while crossing the track at Hampton station "is not sustained by the proof." Upon the hearing in damages it was not necessary that this allegation should be sustained by proof, to entitle the plaintiff to a judgment for substantial damages. It is one of the material allegations which the defendant attempted to disprove, in order to show that the accident was not the result of its negligence. This it endeavored to do by proving that Gallivan was unlawfully upon its tracks at a point east of the station when he was struck, and by proving that the railroad company in the operation of its locomotive discharged the full duty which it owed to one thus unlawfully upon the tracks.

The record contains certain evidential facts; such as that Gallivan took a certain road when he left his house on the evening in question; that he stated what he was going to do; that he was found at a certain place after he was injured; all of which tend to establish the main fact, as claimed by the defendant, that Gallivan was wrongfully upon the tracks

east of the station, and not rightfully crossing the track at the station when he was struck.

But the trial court has not only not found the main fact which the defendant attempted to prove, but with all the evidence before him the trial judge has expressly refused to find it, upon the ground that it was not proved, as appears by the marginal note of " not proven " upon the defendant's proposed finding of facts.

This court cannot correct the record by supplying that fact so essential to the defendant's contention, as there may have been evidence affecting that point other than the facts before us, and as no appeal was taken from the refusal of the trial judge to find the fact as requested. Nor can this court properly say, as defendant's counsel assert in their brief, that " by no possibility" could the accident have occurred at the highway crossing, nor that the only reasonable conclusion consistent with the facts found is that Gallivan was east of the station when he was struck. It was exclusively the province of the trial court to weigh the evidence and decide the question of fact as to the situation of the parties when the accident happened, and as the Superior Court has refused to sustain the defendant's claim upon that question of fact, we cannot, in deciding the questions of law presented, assume upon the facts stated that Gallivan was unlawfully upon the defendant's track.

The material fact averred in the complaint, that Gallivan was injured while he was rightfully crossing the defendant's track at the station, not having been overthrown upon the hearing in damages, the defendant has failed to prove such facts as it was required to prove to support its claim that by performing the duty which it owed to one unlawfully and unnecessarily upon its tracks, at a place where the defendant had no reason to anticipate a person would be walking, it discharged its full duty toward the plaintiff's intestate. The court, therefore, properly overruled the claim that the only duty which the law imposed upon the defendant, upon the facts proved, was " to take all reasonable steps to prevent an accident after the danger was discovered."

It is true that in deciding whether the railroad company performed its duty it is important to learn not only the situation of Gallivan upon the track when the accident happened, but also his relation to the company at that time, as a different rule may be applicable to the conduct of the company toward one of its own employees than toward a stranger.

The complaint neither alleges that Gallivan was engaged in performing his duties as a section foreman when he was injured, nor that he was at any time in the defendant's employ. The court, however, finds that Gallivan was a section foreman in the employ of the defendant, but does not find that he was acting as the defendant's servant when he was injured. It further finds that the accident happened after the working day had closed and Gallivan had been to his home, but rules that the men upon the engine were his fellow-servants.

While the defendant contends that by reason of the averments of the complaint, as well as from the facts found, the only proper standard by which the defendant's action in operating the engine in the manner it did is to be judged, is the degree of diligence and foresight which the law requires a railroad company to exercise toward one not an employee, it seems also to be claimed that the ruling that the men upon the engine were fellow-servants of Gallivan, indicates that the court held that he was acting as the defendant's servant when he was struck, and that in deciding whether it had been proved that the defendant was without negligence, the court applied the law of master and servant, but erroneously failed to apply the rule which exonerated the defendant from liability for an injury caused by the misconduct of the fellow-workmen of the deceased.

Whether we look at the allegations of the complaint or at the facts found, we think the true test of the defendant's negligence in this case is not the legal obligation which a railroad company is under toward its workmen employed upon the tracks, but that the rule to be applied is that which defines its duty toward a stranger.

That Gallivan when injured was acting as the defendant's

servant, was no part of the plaintiff's case, and is inconsistent with the defendant's principal claim that he should be regarded as a stranger. That he was an employee and may have been acting as such at the time of the accident, is mainly important as furnishing some basis for the defendant's claim that, if he was not to be considered a stranger, his injury was the result of the fault of his co-employees. To have availed itself of the rule that an employer is not liable for an injury sustained by an employee through the misconduct of a fellow-servant, the defendant should have shown: first, that Gallivan was engaged as an employee at the time he was injured; second, that the accident was the result of the misconduct of other employees; and third, that the relation of the latter to the deceased was that of fellow-servants. At the defendant's request the court ruled as a matter of law that the engineer, fireman and brakeman were fellow-servants of the plaintiff's intestate, who was a section foreman. But neither that ruling, nor any statement in the record, is equivalent to a finding that Gallivan was engaged in his employment as section foreman when injured. Nor does it appear that the accident was caused by the failure of the men on the engine to perform any duty imposed upon them. Apparently it was not the duty of either the engineer or the fireman to leave his post and act as a lookout upon the back of the tender, nor to require the brakeman to act in that capacity. It does not appear that the brakeman had any duty to perform upon the engine, nor that it was the duty of any of these persons to provide a different light or a reflector and cause it to be placed on the rear of the tender. The negligence charged in the complaint is that of the railroad company. The engine was run to Elliot's station and back in the manner stated, by direction of the train-despatcher and the conductor, and apparently not in violation of any rule or direction of the defendant company. If, therefore, the trial court held that the defendant had failed to prove that it had performed its duty as an employer, and by so ruling applied too high a standard of duty, it is immaterial unless the facts, when tested by the other standard,

Sullivan v. New York, N. H. & H. R. Co.

namely, the duty which the railroad company owed to a stranger rightfully crossing its tracks, show that the defendant performed its duty. Applying the latter test, we think the court did not err in holding that the facts fell short of proof that the defendant performed its full duty.

Railroad companies know that at highway crossings and often at stations people are liable to be crossing the tracks, and that they have the right to do so. The law requires that for the protection of human life all trains, cars and engines shall be so managed that when nearing such places proper warning of their approach shall be given to persons who may be about to cross the track, and that the utmost vigilance shall be exercised to discover any one upon the track in order that those in control of the train may do everything possible to avert an accident. Proof that the defendant's locomotive was run by this station and crossing at 7 o'clock in the evening, in such a manner that none of those upon it could see a person upon the track before them, and under such circumstances that one rightfully and with reasonable care crossing the track upon which the engine was coming, might receive no warning of its approach, is not proof of facts which show as a matter of law that the railroad company was free from negligence.

The facts relied upon by the defendant in the argument as establishing contributory negligence, namely, first, that Gallivan negligently placed himself in a dangerous position by walking upon or near the tracks east of the station; and second, that if he was lawfully crossing the track he failed to look and listen, are not found, nor do they necessarily follow from the facts which are found. In showing that it does not appear from the record that the defendant was without negligence, we have already pointed out that the alleged fact that Gallivan was lawfully crossing the track when injured, does not conflict with the finding, and that the trial court has refused to find that Gallivan was walking upon or near the track as the defendant claims. The first ground, therefore, of the defendant's claim as to contributory negligence, requires no further discussion.

That Gallivan failed to look and listen before crossing the tracks is an assumption which is not necessary in order to reasonably explain the manner in which the accident happened. When we consider that the engine was backing west upon the east-bound track, and that a passenger train coming in the same direction upon the other track reached Hampton station at about the same time with the backing engine, it is easy to see how Gallivan, having looked and listened, may have seen and heard only the approaching passenger train, and may, under the circumstances detailed in the finding, have reasonably supposed that while he was passing over the east-bound track he was in no danger from a train coming west upon that track. There was no error in refusing to hold "that, as a conclusion of law from the facts, the plaintiff's intestate was guilty of contributory negligence."

Since the facts show that the accident was not caused by any incompetency of the engineer or fireman, it is unnecessary to consider the motion to amend the record so that it may appear that they were competent men.

There is no error.

In this opinion the other judges concurred.