### DISHON v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Court E. D. Kentucky. November 20, 1903.)

1. MASTER AND SERVANT—DEATH OF SERVANT—FELLOW SERVANTS.

Plaintiff's intestate was employed by defendant as a section hand, and lived, with others, in a section house near the track. Defendant's employés had been in the habit of cutting trains while standing on the tracks opposite the section house, to afford access to and from the house across the tracks, and on the occasion of decedent's death he and other employés after working hours left the house to go to defendant's depot for their own purposes, and while deceased was passing between certain cars standing on a track the opening was closed, and deceased was caught between the cars and killed, through the alleged negligence of the train operatives in failing to give deceased any warning of their intention to do so. Held that, notwithstanding the injury occurred after working hours, the operatives in charge of the train were fellow servants of deceased, and that he therefore assumed the risk of injury from their negligence.

On Motion for New Trial. Denied.

Robert Harding and Rawlins & Voris, for plaintiff.
Galvin & Galvin, for defendant.

COCHRAN, District Judge. On the trial of this action I sustained a motion by defendant at the close of all the evidence to instruct the jury to find for defendant. Plaintiff has made a motion for a new trial on the ground that I erred in so instructing the jury. The question involved is an interesting one, and deserves and has received at my hands careful consideration.

¶ 1. Who are fellow servants, see notes to Morgan v. City of Des Moines, 8 C. C. A. 668; Canadian Pac. Ry. Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

Injuries to servant while not on duty, see note to Ellsworth v. Metheney, 44 C. C. A. 489.

See Master and Servant, vol. 34, Cent. Dig. §§ 383, 500.

The deceased, John Dishon, was in the employ of defendant as a section hand, and worked on that section of the road which includes High Bridge Station, under a section boss. That station is located on the north side of the Kentucky river, at the point where defendant's road crosses said river by what is known as High Bridge, and on the west side of the railroad. The main track is located next to the station, and on the east side thereof there is at least one, and perhaps two, tracks, which, or the easternmost of which two tracks, if there are two, is a side track used to station cars on when not in transportation. On the east side of the railroad is a section house which at the time of the injury complained of was occupied by said section boss. The petition alleges that it was leased or furnished to him by defendant; that defendant suffered and permitted him to use and occupy it and furnish food and lodging there to its employés; and that it suffered, permitted, and licensed its employés boarding there to go to and from said house across its railroad in front of said house. The evidence, in so far as it related to this matter, bore out this allegation. The evidence introduced by plaintiff tended to show that when cars were stationed on said side track an opening was maintained between them in front of the gate leading to the front door of said section house in order that employés going to and from the house might pass through it. The evidence introduced by defendant tended to show that no such opening was intentionally maintained; that if any such opening was ever there it was so because it so happened; and that employés were in the habit of getting to and from the house when cars were on the track by going around the ends of them, between openings at other points as well as in front of the gate, and at times by crawling under the cars.

The deceased boarded with said section boss at said section house, and on the 30th day of July, 1901, after he had completed his day's work and eaten his supper, he left the house in company with two other hands to go over to the station, on the opposite side of the track, to pass away the time until bedtime. As they did so there was an opening between the cars on said side track in front of, or a short distance south of in front of, said gate. This opening had been there as decedent came in from his work, and he had passed through it to get to the house. One of his comrades passed through the opening safely as they were going over to the station. Decedent then attempted to do so, and whilst he was making the attempt the opening was closed by the cars to the north of the opening being shoved back by an engine manipulating the cars on the track. The effect of this was to crush and kill the decedent. It was on account of the injury thus caused that this action was brought. The negligence charged was in backing said cars against said decedent. The defendant denied negligence in this particular, and pleaded contributory negligence on decedent's part.

The only ground for claiming that defendant had been negligent towards decedent in the backing of said cars was in those in charge of the movements of the engine not giving notice of the fact that the backward movement was about to be made before and at the time

it was being made. Defendant's counsel contended in support of the motion for the peremptory instruction that the burden was upon plaintiff to show absence of such notice, and that there was no evidence tending to show that such notice was not given. Their argument in support of this contention was quite plausible. And it seems certain that plaintiff's counsel conceived that his case was made out by proving the maintenance of said opening, the right of decedent to use it, and the fact that in using it he was crushed and killed by its being closed in the manner stated. No effort was made to show that no notice was given, and if there was evidence tending to show that it was not given it consisted of a presumption that decedent would not have made the attempt to pass through the opening had any notice been given, or crept in undesignedly when plaintiff's evidence was being introduced, or was unnecessarily permitted to get in through defendant's evidence.

Possibly also the peremptory instruction could have been based upon the ground that the evidence showed beyond question that decedent had been guilty of contributory negligence. There can be no doubt but that decedent, before attempting to pass through the opening, made no effort to see whether there was a possibility of the opening being closed whilst he was in the act of passing through it, but made the attempt acting upon the idea that there was no danger. There was also evidence to the effect that just before the house was left one of the persons there present heard the noise of a moving engine. The only possible ground for holding that decedent was not guilty of contributory negligence is that there was an obstruction, to wit, a pile of lumber, near the track on the east side north of the gate leading to the section house, and between it and the engine, so that if decedent had looked in that direction before attempting to pass through the opening to see if there was danger he could not have seen the engine. It may be urged, however, by defendant that this lumber pile did not prevent the engine being seen if an effort had been made to see whether there was danger from that direction, on the ground that it was not high enough to hide the smokestack of the engine. It was good daylight, and otherwise there was nothing to prevent the engine being seen.

But I did not base the peremptory instruction on either one of these two grounds. I based it upon the ground that the servants in charge of the engine were fellow servants of the decedent, and therefore no recovery could be had; and, as I think this point was well taken, it is unnecessary to pass upon the other two grounds.

Plaintiff's counsel concede that if the decedent had been run into by the engine in charge of the same servants whilst he was at work on the track they would have been his fellow servants, and no recovery could have been had. That such is the law is well settled by the decisions of the Supreme Court of the United States, which are binding upon me. In the case of Northern P. Ry. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, it was held that the conductor and engineer upon a passenger train were the fellow servants of a section hand at work upon the track.

The ground upon which plaintiff's counsel contend that the al-

leged negligent servants of defendant were not fellow servants of the decedent is that it was after working hours when the accident happened, and he was then off duty. Is such the value of this fact or circumstance? To answer this question correctly it is necessary that we mount the high ground of principle. That is the proper place from which all that is accidental or transitory should be viewed. The temporary should be estimated in the light of the eternal—sub specie æternitatis—for the transactions of life are but acts in the drama of eternity. What, then, is the principle at the bottom of the fellow servant doctrine? Why is it that a master of two or more servants in the same employment is not liable for an injury to one caused by the pure negligence of another? It is because, there being no express provision to the contrary, it is an implied term of the contract of employment of said servants that they will assume the current risks of the employment other than that of the negligence of the master, of which the pure negligence of a co-servant is one. This is so laid down by Mr. Chief Justice Shaw in the case of Farwell v. Boston & Worcester R. Corp., 4 Metc. (Mass.) 49, 38 Am. Dec. 339, which, according to Prof. Pollock in his work on Torts, is the "fountain head" of all the later decisions on the subject. In the case of Railroad Co. v. Fort, 17 Wall. 553, 21 L. Ed. 739, Mr. Justice Davis said:

"The employé in entering the service of the principal is presumed to take upon himself the risks incident to the undertaking, among which are to be counted the negligence of fellow servants."

Prof. Pollock in his said work, p. 116 (Am. Ed.), thus expresses the matter:

"Strangers can hold the master liable for the negligence of a servant about his business. But in the case where the person injured is himself a servant in the same business he is not in the same position as the stranger. He has of his free will entered into the business and made it his own. He cannot say to the master: 'You shall so conduct your business as not to injure me by want of due care and caution therein;' for he has agreed with the master to serve in that business, and his claims on the master depend on the contract of service. Why should it be an implied term of that contract, not being an express one, that the master shall indemnify him against the negligence of a fellow servant or any other current risk? It is rather to be implied that he contracted with the risk before his eyes, and that the dangers of the service, taken all round, were considered in fixing the rate of payment. This is, I believe, a fair summary of the reasoning which has prevailed in the authorities."

Serious question has been made as to whether this reasoning and the fellow servant doctrine based upon it are sound. But that this reasoning is the true basis of that doctrine is not now disputed by any one. As Prof. Pollock says, it "has prevailed in the authorities." This being so, this reasoning should be given its full force. There should be no sticking in the bark at any point. It should be held that the servant assumes all the risks he runs, excluding that of the negligence of the master, and including that of the pure negligence of co-servants, whenever doing anything contemplated by his contract of employment, i. e., which under that contract it is his duty or he has a right to do. In other words, it should be held that the assumption of risk by the servant is as broad and sweeping'

as the scope of action on his part required or authorized by the contract. The risk of the servant goes with him wherever he goes under his contract of employment, and the assumption should accompany the risk. There is no good reason for holding that the assumption of risk exists when the servant is doing one thing required of him by the contract, and does not exist when he is doing another thing so required, or that it exists when he is doing a thing required of him by the contract, and does not exist when he is doing a thing which he is simply authorized to do by the contract. Any stopping short, therefore, of making the assumption by the servant of the current risks of his employment as wide as the action on his part contemplated by the contract discredits the principle and reasoning on which the fellow servant doctrine is based and that doctrine itself. Hence it is never a test of the application of the fellow servant doctrine to any given case whether or not the injury was received by the servant during working hours or when he was at work after working hours. The sole test of its application thereto is whether at the time of the injury the servant was doing something which it was his duty or he had a right to do under the contract. If he was so acting, the doctrine applies; if not, it does not apply. I think this test is clearly deducible from the relevant authorities. In the following cases, to wit: Gilshannon v. Stony Brook R. Corp., 10 Cush. 228; Ryan v. Cumberland Valley R. Co., 23 Pa. 384; Northern P. Ry. Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Martin v. Atchison, T. & S. F. R. Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051; Abend v. T. H. & I. R. Co., 111 Ill. 203, 53 Am. Rep. 616; L. & N. R. Co. v. Stuber, 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696—it was held that servants going to work in the master's vehicles on his premises had assumed the risk of the negligence of co-servants engaged in operating said vehicles or in operating other vehicles with which they collided. In the Gilshannon, Ryan, Charless, and Martin Cases the servants were day laborers, riding in the first two on gravel trains, and in the last two on hand cars. In the Abend Case the servant was a head blacksmith riding on a wrecking train going to a wreck. In the Stuber Case he was a foreman of water supply, riding on a detached engine to a station where his services were required. In the following cases, to wit: Gilman v. Eastern R. Corp., 10 Allen, 233, 87 Am. Dec. 635; Russell v. Hudson R. Co., 17 N. Y. 134; Northern P. Ry. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Tunney v. Midland R. Co., L. R. 1 C. P. 291—it was held that servants returning from work in the master's vehicles on his premises had assumed such risk. In the Gilman Case the servant was a carpenter returning from work at the noon hour, riding on a platform car attached to an engine and tender. In the Russell, Peterson, and Tunney Cases the servants were day laborers, riding in the Russell Case on a gravel train, in the Peterson Case on a hand car, and in the Tunney Case on a "pick up train." In the Tunney Case, Willes, J., said:

"The circumstance of the day's work being at an end when the accident happened can make no difference, for it was a part of his contract that

he was to be carried by the train to and from the place where his work happened to be."

In the case of Kumler v. Railroad Co., 33 Ohio St. 150, it was held that a day laborer riding on a gravel train from one place of work to another such place assumed the risk of the negligence of the engineer on said train. In the case of Ellington v. Beaver Dam L. Co., 93 Ga. 53, 19 S. E. 21, it was held that a day laborer about to mount an engine to return home assumed the risk of the negligence of the engineer thereof. In the case of McGuirk v. Shattuck, 160 Mass. 45, 35 N. E. 110, 39 Am. St. Rep. 454, it was held that a laundress going to the master's place of business in his wagon on the public highway assumed the risk of the negligence of the driver, thereof. In the following cases, to wit, Olsen v. Andrews, 168 Mass. 261, 47 N. E. 90; Boldt v. N. Y. C. R. Co., 18 N. Y. 432; Ewald v. Chicago & N. W. R. Co., 70 Wis. 420, 36 N. W. 12, 591, 5 Am. St. Rep. 178—it was held that servants going to work on the master's premises on foot had assumed the risk of the negligence of co-servants engaged in operating vehicles on said premises, which ran into them. In the Olsen and Boldt Cases the servants were day laborers. In the Olsen Case he was walking on a bridge, returning to work, at the noon hour, and was run into by a derrick car. In the Boldt Case he was walking on a railroad track, and was run into by a passenger train. In the Ewald Case the servant was an engine wiper, and whilst crossing a certain railroad track on a path used by the servants of the company, between cars left apart for that purpose, he was injured by the cars being jammed together. The court said:

"As to what may be the law when an employé of a railway company is not actually employed, or at any intervals of actual labor, or going to or from his labor, his own way, and independently of the company, or under other circumstances, is immaterial to this case. The authorities may be in great conflict on that question, but we are not aware that they are in conflict on the question presented by the facts of this case. Here we have a private pathway over the grounds of the company, granted and allowed to the plaintiff and other employés of the company, who worked in the roundhouse, by usage, custom, and consent, for their ingress and egress to and from their work, kept open across the track of the road, and which had been worn and used by himself for a long time prior to the injury, and that in order to reach the roundhouse—it was necessary for him to go upon said pathway and to cross the track of the company at that place. It was the means and only means of entrance and exit to and from their work furnished by the company, and the plaintiff and others had a right to its free and uninterrupted use, as they always had, and it was because they were employés of the company in the roundhouse that they had such right and privilege. * * * Our present concern is, was he, when injured, an employé of the company? The peculiar facts of this case, which make him such, appear to involve precisely the same principle as that class of cases where the plaintiff was being carried on his way from and to his place of labor by the railroad company, by consent, custom, or contract, and was injured by the negligence of other employés of the company."

In the case of Lovell v. Howell, 1 C. P. Div. 161, it was held that a licensed waterman and lighterman, whose only duty was to moor and unmoor barges, acting as such for a corn merchant and warehouseman, and whose habit was to pass through the warehouse from the water to the land side to receive orders, or when sent for, as-

sumed the risk of the negligence of other servants of the warehouse-man engaged in hoisting grain, and hence could not recover for an injury sustained by him whilst so passing on his accustomed route by being knocked down by a sack of grain which one of such other servants was in a negligent manner hoisting by means of a crane from a wagon.

In the following cases, to wit, St. Louis, A. & T. Ry. Co. v. Welch, 72 Tex. 298, 10 S. W. 529, 2 L. R. A. 839, and International & G. N. R. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219, it was held that a serv-ant of a railroad company engaged in putting in and repairing bridges along the line of its road, and sleeping at nighttime in the bunks of a sleeping car on a side track provided for the purpose by the company, had assumed the risk of the negligence of the serv-ants of the company, who negligently ran a freight train on the side track and struck the sleeping car whilst they were so asleep in it. In the Welch Case the servant was the foreman of the bridge gang, and in the Ryan Case he was a member of the gang. In the Welch Case, Gaines, J., said:

"The plaintiff at the time of the accident was asleep on a car belong-ing to the company, provided by it for that purpose, which was placed upon its side track. He was liable to be called upon at any moment to go out with his gang upon duty at the time he received the injury. That the accident occurred when he was resting from his labors we think makes no difference. He was subject to the call of the company at the time, and his case differs from that of other servants who engage for certain hours of employment, and who are injured during the intervals in which the master has no claims upon their services. We think the court should have in-structed the jury that if plaintiff was foreman of the bridge gang, and was injured by the negligence of the employés operating a train on the road, he was the fellow servant of such employés; and also that if at the time of the accident he was asleep upon a car provided for the purpose by the com-pany, and, under his contract, was subject to be called out for duty at any moment, he was on duty."

In the Ryan Case, Hobby, J., said:

"In this case we think it is evident from the facts testified to by the appellee that he was, in contemplation of the law, in the employment of the company at the time of the collision. His presence on the car on the side track at the time of the collision can be explained in no other way, under the proof. It was only by reason of the fact that he was an employé of the company that he was in the car on the side track at the time he was injured. We do not wish to be understood as holding that if the fact was established his employment had ceased, or that he was not, in con-templation of the law, at the time of the injury, in the service of his em-ployer. We think that he was in such employment."

In all cases thus far cited it may be said that the servant when injured was doing that which, under the contract, he was in duty bound to do, and, further, which he had a right to do, in order that he might earn the wages coming to him. The doctrine applies equally to cases where such servant was doing that which he was not in duty bound to do, but which by virtue of the contract of em-ployment he had the mere privilege of doing. In the case of Ion-none v. N. Y., H. & H. R. Co., 21 R. I. 452, 44 Atl. 592, 46 L. R. A. 730, 79 Am. St. Rep. 812, it was held that a day laborer engaged in removing snow from the tracks of a railroad company, who had

completed his work, and was riding upon a car of the company from the point where he had finished his work to another point a mile or two distant, and adjacent to the place of his abode, by invitation of a person in authority, had assumed the risk of the negligence of said company's servants engaged in operating said car. Matteson, C. J., said:

"The carrying of the deceased after his day's work was done to a point near his home is, we think, to be regarded, not as creating 'the relation of' passenger, but rather as a privilege incidental to the contract of service, granted to him by the defendant, of which he availed himself to facilitate his return home, and that it was a privilege accorded to him merely by reason of his contract of service."

In the case of Adams v. Iron Cliffs Co., 78 Mich. 271, 44 N. W. 270, 18 Am. St. Rep. 441, the founder in a blast furnace having charge of the inside work was killed whilst attempting to cross railroad tracks on the furnace premises, and operated in connection with the furnace, in the act of leaving them, during working hours, to attend to his private business, by the negligence of the engineer operating a locomotive and cars on said track. Under the contract of service the decedent was authorized to leave the premises and attend to his private business during working hours. It was held that the engineer was the fellow servant of the decedent, and no recovery could be had.

These authorities, I think, make good the proposed test as to the application of the fellow servant doctrine in cases such as this. It is now in order to consider certain authorities which may lead one to think that the test is not as I have stated it. Some of them have been cited by plaintiff's counsel to that effect. But proper reflection will show that they are not against that test; that in fact they make it good by way of contrast.

The following cases, to wit: Baird v. Pettit, 70 Pa. 477; Savannah, F. & Wh. Co. v. Flannagan, 82 Ga. 579, 9 S. E. 471, 14 Am. St. Rep. 183; Sullivan v. N. Y., N. H. & H. R. Co., 73 Conn. 203, 47 Atl. 131; Fletcher v. B. & P. R. Co., 168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411—may be classed together. In each of these cases the servant was injured after working hours by the pure negligence of co-servants, and it was held that the master was liable. But this was not because it was after working hours that the accidents happened which resulted in the injuries. It was because in each instance the servant was not doing that which he was bound to do, or had a right to do, under the contract of employment, but was doing that which he had a right to do otherwise, to wit, walking along the public highway. This he had a right to do as one of the public, irrespective of that contract. In the Baird Case a draftsman in the master's locomotive works was injured by falling over a pile of dirt on the public footwalk placed there by other servants of the master in excavating a cellar under said works, whilst he was walking on the same, as he left the premises in the dark after ceasing his day's work. Williams, J., said:

"The risk which occasioned the injury was not one incident to the business, and to which only the workmen engaged in carrying it on were exposed,

but one unconnected with the business, and to which all citizens having occasion to pass along the street were as much exposed as the plaintiff and his fellow workmen."

In the other three cases the servant of a railroad company was crossing the tracks of the company at a highway crossing after ceasing the day's work. In the Fletcher Case Mr. Justice Peckham said:

"The plaintiff at the time of the accident had finished his employment for the day, and had left the workshop and grounds of the defendant, and was moving along a public highway in the city, with the same rights as any other citizen would have. The liability of the defendant to the plaintiff for the act in question is not to be gauged by the law applicable to fellow servants, where the negligence of one fellow servant by which another is injured imposes no liability upon the common employer. The facts existing at the time of the happening of this accident do not bring it within this rule."

Then the following cases, to wit: Gillenwater v. Madison & I. R. Co., 5 Ind. 339, 61 Am. Dec. 101; Washburn v. Nashville & C. R. Co., 3 Head, 638, 75 Am. Dec. 784; O'Donnell v. Allegheny V. R. Co., 59 Pa. 239, 98 Am. Dec. 336; Abell v. Western Md. R. Co., 63 Md. 433; Denver & B. P. R. T. Co. v. Dwyer, 20 Colo. 132, 36 Pac. 1106; McNulty v. Penn. R. R. Co., 182 Pa. 479, 38 Atl. 524, 38 L. R. A. 376, 61 Am. St. Rep. 721; Doyle v. Fitchburg R. R. Co., 162 Mass. 66, 37 N. E. 770, 25 L. R. A. 157, 44 Am. St. Rep. 335; Dickinson v. West End St. Ry. Co., 177 Mass. 365, 59 N. E. 60, 52 L. R. A. 326, 83 Am. St. Rep. 284; Peterson v. Seattle Traction Co. (Wash.) 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586—may be classed together.

In the Gillenwater, Washburn, O'Donnell, Abell, McNulty, and Doyle Cases the servant was riding upon a passenger train of the master, and was injured by the negligence of other servants operating it or another train with which it collided. In the Dwyer, Dickinson, and Peterson Cases he was riding upon a street car of the master, and was injured by the negligence of the servant operating it. In the Dwyer and Peterson Cases the servant was a day laborer, who worked upon the track of the street railroad, and was returning home after completing his day's work. In the Dickinson Case he was an employé in uniform going to his dinner by another route than that on which he was employed.

Then as to the steam railroad cases: In the Gillenwater Case the servant was a carpenter going to his work; in the Washburn Case he was an engineer returning to his home at Chattanooga from Nashville, where he had gone on his own business; in the Abell Case he was a brakeman returning from the terminus of his route to his home at Baltimore to spend Sunday with his family; in the O'Donnell and McNulty Cases the servants were bridge workmen going from their work to their homes; and in the Doyle Case the servant was traveling on the master's train for his own convenience, and in no way connected with the contract of service.

It is to be noted that in all these cases the servant would have had a right to ride as he was riding at the time of his injury had he not been a servant at all, and that in the capacity of a passenger. The train or cars upon which he was riding were passenger trains

or cars, and upon payment of the proper fare, or without payment, had the master seen fit to waive it, the master would have been bound to transport him as he was being transported at the time of the injury as a passenger, and deliver him safely at his destination. In all such cases, therefore, it is possible that the servant was being transported in pursuance to an independent contract of carriage, and not in pursuance to his contract of employment, or, if he was being transported in pursuance thereto, that it was the intention of the parties thereto that he should be transported as a passenger, with all the rights of a passenger. If either alternative was true, of course the servant had not assumed the risk of the pure negligence of his co-servants, and would be entitled to recover for any injury occasioned thereby; for in the one instance, at the time of the injury, he was not doing anything which he was bound or had a right to do under his contract of employment, and in the other instance, though he was doing that which he did have a right to do thereunder, the intention of the parties was that he should be transported in the capacity of a passenger, with all the rights of such, which excluded from the contract any assumption of such risk.

Now, in all of the cases last referred to and classed together, it will be found, on an examination of them, either that the servant was not being transported in pursuance to the contract of employment, or, if he was, the contract was construed to be that he was to be transported in the capacity of a passenger, and not that of a mere servant. The Gillenwater and Washburn Cases arose very early in the history of the fellow servant doctrine, and the court in the Gillenwater Case seems to have been affected by the separate department theory. In the Washburn and Dickinson Cases, and possibly in the Abell Case, the transportation was no part of the contract of employment, and hence the servants could not but have been passengers when injured. This was particularly so in the Dickinson Case, where the transportation was in pursuance to a rule of the street car company which provided for the transportation of policemen, firemen, advertising agents, news agents, and employés in uniform free of charge. In the O'Donnell, Dwyer, McNulty, Doyle, and Peterson Cases the contracts of employment were construed to provide for transportation of the servant who had been injured in the capacity of passenger. In such cases, however, though it may be that the servant is being transported in pursuance to his contract of employment, the contract may not be to transport him in the capacity of passenger, but simply as a servant. Where this is the case, there is an assumption of the risk in question. This was so decided in the following cases, to wit: Seaver v. Boston & Maine R., 14 Gray, 466; Manville v. Cleveland T. R. Co., 11 Ohio St. 417; Higgins v. Hannibal & St. J. R. Co., 36 Mo. 418; Vick v. N. Y. C. & H. R. R. Co., 95 N. Y. 267, 47 Am. Rep. 36; Knahtla v. Oregon Short Line & N. W. R. Co., 21 Or. 136, 27 Pac. 91; Wright v. Northampton R. Co., 122 N. C. 852, 29 S. E. 100; Hutchinson v. York, 5 Exch. 343.

The case of Ionnone v. N. Y., N. H. & H. R. Co. is possibly a case of this sort, as it is not stated in the report thereof whether

the car on which the servant was being transported at the time of the injury was part of a passenger train or not. In the Seaver, Manville, Vick, Knahtla, and Hutchinson Cases the servant was on the way to his work; in the Seaver Case he was a carpenter; in the Manville Case, a conductor of a gravel train; in the Vick Case, a foreman of the shops; in the Knahtla Case, a day laborer going to a wreck on a delayed passenger train; and in the Hutchinson Case, a day laborer. In the Wright Case the servant was a section boss on his way home from his work. In the Higgins Case the servant was an engineer going from place to place looking for something to do. In the case of O'Brien v. Boston & Albany R. Co., 138 Mass. 387, 52 Am. Rep. 279, the servant was a day laborer engaged in track repairing, who quit his work just before his day was up, and went to Cottage Farm Station, to take a passenger for Boston to get his wages, and whilst running along the track between the train and station to get on the train was run into by a hand car on that track. It was held that he had assumed the risk of the negligence of the servants operating the hand car, and could not recover.

Now, just what is the test by which to determine whether, in any given case of this kind, where the contract of transportation is a part of the contract of employment, the servant is to be transported in the capacity of passenger, or simply as servant, may not be readily pointed out. The cases referred to above certainly do not clearly indicate what it is. It is possible that some of them, at least, are in conflict. In the Vick Case, for instance, the New York Court of Appeals expressly disapproves of the decision of the Supreme Court of Pennsylvania in the O'Donnell Case. It is possible also that, in the Ionnone Case, Matteson, C. J., intended to indicate his idea of the test when he said:

"The declaration does not aver that the deceased paid anything for his transportation, nor that any deduction was to be made by the defendant from his wages on that account, or that he was paid a less sum by reason of his transportation than he would otherwise have been."

I do not, however, feel concerned in this case to settle what the true test in this particular is. For the decedent was not being transported in any vehicle at the time of the injury, and there was nothing in his contract that involved transportation, so far as this record shows. All that I am concerned to show is that those authorities which hold in cases of the class now under consideration that there is no assumption of the risk in question do not run counter to the test I have laid down of determining in any case whether such risk has been assumed. This I think I have shown. They do not run counter to that test, because it has no application save to cases where the transportation to and from work or otherwise is a part of the contract of employment, and then only where there is no express provision in the contract that the servant is not to assume the risk of the pure negligence of fellow servants, and a provision therein to so transport him in the capacity of a passenger is equivalent to such a provision in regard to the train or car on which he travels.

In calling attention to the fact that in all of the cases belonging

to the class now in question the servants were being transported on trains or cars open to the public generally, I would not be understood to exclude the doctrine of them in every contingency from cases where the servant is not being so transported, but in vehicles upon which no one is entitled to be transported without the consent of the master. It is possible that even in such a case the contract of employment may call for transportation as a passenger. In the case of Fitzpatrick v. New Albany & S. R. Co., 7 Ind. 436, it was held that a day laborer employed in ballasting the railroad with sand and gravel, who was injured in going to his work on a gravel train, could recover for the injury. Davison, J., thus stated the ground of the decision:

"He was not, it is true, a mere passenger; his travel on the cars was an incident to the business on which he was employed; but under an agreement with the defendant he was to be regularly conveyed to and from his work. This, it seems to us, involves an implied engagement that they would convey him as safely and securely as if he really had been a passenger in the ordinary sense of the term. Indeed, it is averred in the complaint and admitted by the demurrer that he was received on board as a passenger."

By referring to this case, I would not be understood as indorsing the seeming opinion of the court that a mere agreement by master to transport a servant to and from his work by a conveyance other than that upon which the public generally were entitled to ride upon payment of fare, without the consent of the master, is sufficient of itself to exclude the assumption of risk in question herein from the contract of employment. I refer to it simply as a basis for the concession of the possibility that the doctrine of the class of cases under consideration may apply where the transportation is by such a conveyance. But in view of the fact that the Fitzpatrick Case is the only one which I have been able to find in which it has been applied is sufficient to show that this possibility is a bare possibility. It is hardly reasonable that a master would agree to transport his servant to and from his work as a passenger by conveyance upon which he was not bound to transport passengers.

There are three other cases relied on by counsel for plaintiff as being against the test proposed for the disposition of this case. They are as follows, to wit: B. & O. R. Co. v. Trainor, 33 Md. 542; Ellsworth v. Metheney, 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389; Orman v. Salvo, 117 Fed. 233, 54 C. C. A. 265.

In the Trainor Case the servant was a spiker or trackwalker. It was his duty as such to traverse a certain section of the railroad track to see that it was in order. He quit work every evening at 6 o'clock to resume in the morning. One evening after so quitting he was proceeding along the railroad track at a point not within his section towards his home, when he was run down by a train. It was held that he had not assumed the risk of the negligence of the servants operating said train. The case is meager in its statement as to how and by what right said servant came to be walking upon that portion of the track. It did not appear that he was so doing under and in pursuance to his contract of employment. The

decision in the Metheney Case was by the Sixth Circuit Court of Appeals. In that case a coal miner during the noon hour, while not engaged at work, visited another miner in a different part of the mine, and was killed by coming in contact with an electric wire strung along brackets set in the wall of the entry through which he had to pass in making the visit. It was the custom of the miners to use the entries in the mine as a place for congregating or passing to and fro during the hours of recreation, and this they did with the knowledge of the owner of the mine and without objection on his part. It was held that the mine owner owed the duty to the de-cedent to properly insulate or inclose the wire or give him notice of the danger, and that if he failed so to do he was liable for the death of the miner caused thereby whilst he was using the entry in the manner stated. The ground of liability was then not the negligence of the co-servants, but negligence upon the part of the mine owner himself—a failure to perform a duty which he owed himself to the miner. The court, however, held that the duty which the mine own-er owed the decedent was not the personal and positive duty of a master to provide a reasonably safe place for his servants in which to work, but the duty which a person who licenses and authorizes another person to use his premises to use due care to keep them reasonably safe. Judge Day, in giving his reasons for this holding, said:

"It is to be borne in mind in this connection that Metheney was not going from or going to his work. He was not engaged in the business of his employer at the time of the injury, but came to his death during the noon hour, while returning from a visit undertaken upon his own volition outside of the part of the mine in which he was employed."

This case suggests the question whether or not the personal and positive duties of the master to the servant are as wide as the scope of action on the part of the servant contemplated by the contract of employment, i. e., pertain to that which the servant is not bound to do under his contract, but has the privilege of doing for his own pleasure or to serve his own ends because of his relationship to the master, and may be regarded as giving a negative answer to this question. But it does not follow that because these duties of the master are not so wide that the assumption of risk by the servant is not. There is nothing in this case to indicate that the court would have held that if the decedent, in returning from the visit to his fellow miner, had been killed by the pure negligence of a co-servant, the master would have been liable.

The Salvo Case was a decision by the Eighth Circuit Court of Appeals. In that case the master was engaged in railroad grading which required blasting. His servants were divided into day and night shifts. The servants slept in tents near the blasting, and it was the rule of the master that when a blast was to be made one of the servants should warn those in the tents that the blast was about to be made, so that they could get out of the way. The injured servant belonged to the night shift, and whilst asleep in a tent a blast was made of which he was not warned, and by reason of

which he was injured. It was held that the master was liable. Judge Lochren said:

"While engaged at his meals or wrapped in slumber he was performing no services for the master, and being in the performance of no employment, but obtaining and enjoying compensation from the master, he was not during such time the fellow servant of any of the employés who were at work, about which he was in no way engaged or assisting. He was not in the condition of a servant who is being conveyed in a car to his work, but was as much separated from it as if he had been sleeping in his own home, a mile away. The master who had furnished him this lodging, located at a place made dangerous by the discharges of blasts in conducting the master's business, owed him the duty of giving him timely warning, to enable him to avoid the danger."

It must be conceded that this decision is against the test I have proposed, and if the court rendering it were above me I might feel bound by it to hold otherwise than I do. The servant at the time of the injury was doing not only that which he had a right to do, but which, no doubt, he was in duty bound to do, under the contract of employment, in order to facilitate the performance of his services, just as in the two Texas cases cited above the bridge workmen were sleeping in the sleeping car provided on a side track for that purpose. And herein is the difference between what Salvo was doing when injured and what he would have been doing had he been "sleeping in his own home, a mile away." Had he been so doing he would have been doing what he had a right to do as owner of his home, and not what he had a right or was bound to do under his contract of employment. It is with great diffidence that I take a position seemingly in conflict with that of so able a court, but I am driven to it by my own conception of correct principles as deduced from the authorities cited. It is possible that this case can be distinguished from those authorities on some ground that does not occur to me, and there is this difference between that case and this. The decedent at the time he was killed was not doing that which he was bound to do under his contract, but was doing something of his own volition, whereas in that case Salvo, no doubt, was doing that which he was bound to do. And there seems reason for implying an assumption of the risk in question when a servant is doing that which he does of his own accord than when he is doing something which he is bound to do under the contract.

This completes the consideration of the relevant authorities. It remains to apply the test deduced from them to the case in hand. The decedent at the time of the accident was doing, of his own volition, that which he had a right to do under or by virtue of his contract of employment; this according to the allegations of the petition and the reasonable inference from the evidence. It is likewise a reasonable inference therefrom, though none bearing directly thereon was introduced, that it was his duty under the contract to board at said section house with the section boss in order to facilitate the performance of his duties, and that he might be in ready call in case of an emergency. This being so, it must be held that he assumed the risk of the negligence of those engaged in manipulating the cars on the side track. Certainly, if the accident had

happened when he came in from his work no recovery could have been had, and it is hard to conceive how the mere fact that it happened a half hour or so later, when he was crossing the track to go to the station to pass away the time until bedtime, could make any difference.

The motion for new trial is overruled.