Annie McGuirk vs. William B. Shattuck & another.

Berkshire.    September 12, 1893. — October 24, 1893.

Present: Field, C. J., Allen, Holmes, Knowlton, & Lathrop, JJ.

*Personal Injuries — Fellow Servant — Negligence — Action.*

A woman, who is employed by a person as a laundress, and who, while being conveyed, either gratuitously or as a part of the contract of employment, from her house to that of her employer in his wagon, the horse attached to which is driven by his coachman, is injured by the negligence of the latter, is to be regarded as in the service of the former at the time of the accident, and is a fellow servant of the coachman, and cannot maintain an action against the employer for her injury.

A woman was employed by a person as a laundress, and had been conveyed, either gratuitously or as a part of the contract of employment, from her house to that of her employer in his wagon, which contained two seats, and the horse attached to which was driven by his coachman. Upon the driver's coming to take her on a second occasion, she observed that the second seat was gone, and, upon inquiring the reason, the driver said it was broken. She thereupon took a camp-chair from her house and placed it in the wagon directly back of the other seat, upon which the driver sat with another servant. She then sat on the chair with her child in her lap, having both arms around him and holding with both hands on the back of the wagon seat. On the way to the employer's house, the driver drove rapidly, and turned a corner of two streets so shortly that the wagon slewed around, the forewheels struck something, and she was thrown out and injured. *Held,* in an action against the employer for the injury, that, if the wagon was unsuitable by reason of the want of the second seat, this was obvious, and if she saw fit to use the chair, and this mode of riding was unsafe, it was her own act rather than the defendant's negligence which caused the injury; and that the action could not be maintained.

Tort, against William B. Shattuck and Elizabeth C. Shattuck, his wife, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendants and of their servant. Trial in the Superior Court, before *Dewey,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff introduced evidence tending to prove that she

was employed as a laundress by the defendants; that by the contract made with the plaintiff by Mrs. Shattuck, one of the defendants, the plaintiff was to work by the day at the rate of twenty dollars a month; that the plaintiff told Mrs. Shattuck, at the time the contract was made, that she should want to bring her little boy about five years of age with her; that Mrs. Shattuck said to the plaintiff at the same time, " If it is too far for you to walk, I will send the team for you," and the plaintiff replied, " I can walk "; and that a dressmaker by the name of Mary Kaufman was living with the plaintiff, and was engaged to do sewing for the defendants, going to the defendants' house to work when the defendants should send for her. The plaintiff commenced work for the defendants on Tuesday, she and her little boy walking to and from the defendants' house; on Wednesday they did the same; and on Thursday Kaufman, being wanted, went with them. On Friday morning Kaufman was to go again with the plaintiff to work for the defendants, and, as they were about to start, the defendants' team, driven by the defendants' coachman, came to the plaintiff's house to carry the plaintiff, her boy, and Kaufman to the defendants' house, and they rode. The wagon had two seats; Kaufman sat with the coachman on one, and the plaintiff and her boy sat on the other. On Friday night Mrs. Shattuck told the plaintiff that she would not want her or Kaufman until Monday, and she would try to send the team for them. The defendants sent the team for them on Monday morning. The plaintiff noticed that there was but one seat in the wagon, and asked the coachman where the other seat was. He replied that it was broken. The plaintiff said, " We cannot all ride on that seat," and got a camp-chair, and, placing it in the wagon directly back of the wagon seat, sat on it, holding her boy on her lap, both she and the boy facing toward the front of the wagon, and the plaintiff placing her arms around the boy and taking hold of the back of the wagon seat with both hands, and Kaufman sitting on the seat with the coachman. On the way to the defendants' house, the coachman drove rapidly down a street which was slightly down grade, and as they approached a corner which they were to turn drove still more rapidly. The coachman was talking and

laughing with Kaufman, and just as they were about to turn the corner he raised his hand to salute a friend. The horse was going so rapidly, and turned so short, that the wagon slewed around, the fore wheels struck something, and the plaintiff was thrown out, and her arm was broken. The chair remained standing in the wagon. The horse was under control, and the coachman stopped the horse within three or four rods of the corner. The evidence offered by the plaintiff also tended to prove that the wagon was an ordinary wagon, made for either one or two seats, and would carry four people; that it had been used sometimes to carry small trunks, and often to carry girls to the depot; that the seat was of the ordinary width, and three people could ride on the seat, but could not sit comfortably; that, if two people as large as Powers and Kaufman sat on it, the room would be pretty well taken up; and that the plaintiff had ridden on this seat in this wagon many times with a farmer, and always had to hold her boy on her lap, as there was not room for him on the seat.

At the close of the plaintiff's evidence, the defendants requested the judge to rule that the plaintiff could not recover, and to direct a verdict for the defendants; the judge so ruled, and directed a verdict for the defendants; and the plaintiff alleged exceptions.

*F. H. Cande*, for the plaintiff.

*C. E. Burke*, (*T. P. Pingree* with him,) for the defendants.

ALLEN, J. 1. The plaintiff must be regarded as having been in the service of the defendants at the time of the accident. Whether the transportation of the plaintiff was entirely gratuitous, as it seems to have been, or whether it was in pursuance of such an understanding between the parties that it may be deemed to have been a part of the contract, in either case it was incident to the service which the plaintiff was to perform, and closely connected with it. In this respect the case falls directly within the principle of *Gillshannon* v. *Stony Brook Railroad*, 10 Cush. 228. See also *Seaver* v. *Boston & Maine Railroad*, 14 Gray, 466; *Gilman* v. *Eastern Railroad*, 10 Allen, 233, 238; *Holden* v. *Fitchburg Railroad*, 129 Mass. 268, 272; *O'Brien* v. *Boston & Albany Railroad*, 138 Mass. 387; *Ryan* v. *Cumberland Valley Railroad*, 23 Penn. St. 384; *Manville* v. *Cleveland & Toledo Railroad*, 11 Ohio St. 417; *Higgins* v. *Hannibal & St.*

*Joseph Railroad*, 36 Mo. 418, 433 ; *Ewald* v. *Chicago & North-western Railway*, 70 Wis. 420. The accident happened, it would seem, in consequence of the negligence of the driver, who was a fellow servant of the plaintiff. There was no evidence that the defendants were negligent in the employment of this driver, and there is no contention or suggestion by the plaintiff to that effect. The case, therefore, is the ordinary one where an accident has occurred through the negligence of a fellow servant, and no recovery can be had.

2. The plaintiff further contends that the defendants were negligent in failing to furnish a safe and suitable wagon. If the wagon was unsuitable by reason of the want of the second seat, this was obvious ; and if the plaintiff, being aware of it, saw fit to put in a camp chair, and to sit in it, and if this mode of riding was unsafe, it was her own act rather than the negligence of the defendants that led to the injury.

*Exceptions overruled.*