**JONES et al. v. CASUALTY RECIPROCAL EXCH. (No. 2719.)***

(Court of Civil Appeals of Texas. Texarkana. April 6, 1923. Rehearing Denied April 19, 1923.)

**Master and servant ⬉375(2)—Employee hurt while riding to work in employer's conveyance held to have suffered injury "in course of employment" within Compensation Law.**

Where employees of an ice company had permission to use the company's automobile truck as a means of transportation to and from work, and during the noon hour while returning to work after dinner one of them was injured in a collision on a public highway several blocks from employer's premises, he suffered an "injury in the course of employment" within the Workmen's Compensation Law (Complete Tex. St. 1920, art. 5246—82), defining the term as injury having to do with and originating in the work and received while engaged in or about the furtherance of the affairs or business of the employer, whether on the employer's premises or elsewhere.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

Appeal from District Court, Grayson County; Silas Hare, Judge.

Proceeding under Workmen's Compensation Act by Mildred Jones and another for the death of James Jones, husband and father, opposed by the Casualty Reciprocal Exchange, insurer of the Denison Crystal Ice Company, employer. The Industrial Accident Board awarded compensation, and the insurer brought suit to set aside the award. From a judgment setting aside the award, claimants appeal. Reversed, and judgment entered on the award.

During the year 1921, the Denison Crystal Ice Company, a corporation, was a subscriber to the Employers' Liability Act, and at the time had more than three employees and was carrying a policy of insurance with the Casualty Reciprocal Exchange of Kansas City, Mo., of the kind and character required by the Employers' Liability Act of Texas. James Jones was in the employ of the ice company, and was one of the employees covered in the insurance policy. On January 20, 1921, after eating his dinner, and during the noon hour, James Jones, with another employee of the ice company, was returning in an auto truck of the ice company to the ice company premises, and on reaching Crokett street, several blocks from the ice company's plant, the auto truck in attempting to pass another auto was turned over, and James Jones injured to the extent that in a few hours he died. The ice company permitted or authorized the use of the auto truck as a means of transportation of the deceased and other employees to and from the place of work. James Jones left surviving him his wife, Mildred Jones, and a daughter, Bernice Jones, 11 years old. After the death of James Jones, the proper notice was given to the ice company and the insurance company, and the matter was legally and regularly presented to the Industrial Accident Board, which board on April 15, 1921, made its findings to the effect that James Jones was in the employ of the ice company and as such employee was covered by the insurance policy, and made an award of $10.38 per week to the wife and daughter for 360 weeks, beginning January 20, 1921. Exception was filed to the finding and award of the Industrial Accident Board by the insurance company, and suit was filed by them in the district court of Grayson county April 16, 1921, for the purpose of setting aside the finding and award of the Industrial Accident Board. In a trial before the district court a judgment was entered setting aside the award of the Industrial Accident Board, and judgment entered in favor of the appellee.

The court made the following findings of fact:

1. "The busy season with the ice company is from April to the latter part of September, and the balance of the year the ice company has its employees doing various kinds of work, designated as 'odd jobs,' which is a part of the ice business. The plant of the ice company is located in Denison, about two miles north, on a farm. The deceased, James Jones, lived about a half mile south of the ice company's plant. In the month of January, 1921, the ice company was using a number of its employees constructing or repairing a dam on the farm. The employees would meet at the plant, punch the time clock, get in a truck belonging to the ice company, operated by Mr. Tobin, general manager of the ice company, and go to the tank, where they would work until about 12 o'clock, then return to the ice plant in the truck, punch the time clock, and they were allowed one hour for lunch, would then return to the ice plant, punch the time clock, go back to the tank and complete the day's work, return to the ice plant in the truck, and punch the time clock for the closing of the day's work. Some of the employees lived close to the plant, and in returning from the dam to the plant they would leave the truck as it neared the place of their residence before reaching the ice plant. On January 20, 1921, James Jones (the deceased) started to work at 7:01 a. m. and checked out

at 12:01, as shown by the card in the time clock introduced in evidence. After checking in at the ice plant on this date, the employees, as was the custom, got in the Ford truck and went to the dam. They returned to the plant, and James Jones checked out, as stated, at 12:01. When they drove up to the ice plant, Mr. Tobin was driving the truck. He got out, and Will Browning, a negro employee, took the wheel. Mr. Tobin left, James Jones went in the plant and punched the time clock, consuming some four or five minutes. He then returned and got into the truck with Will Browning. The engine was left running all the time. Browning and Jones then went south, as was their custom; Jones getting out at his residence, and Browning driving the truck on to his home. When Jones had finished his lunch, he walked down to Browning's house, and they got in the truck and started back to the ice plant. While going along Crockett street, a public highway some blocks from the company's plant, they attempted to pass another car. The truck was turned over and James Jones was injured to the extent that in a few hours he died."

2. "The Ford truck that caused the death of James Jones was the property of the ice company, and at the time of the accident was being used by permission of said company."

3. "When James Jones punched the time clock at 12:01 on January 20, 1921, he was allowed an hour to do as he pleased. He could stay at the plant, go to town, or to his home. The hour was ample time to have enabled him, if he had desired, to walk home, get his lunch, and return to the plant in time to punch the clock at 1 o'clock. When he punched the clock and got in the truck to go to his lunch, he was using the truck of the ice company for his own accommodation; he was not going on any work for the ice company, nor was he directed to use it by any officer or agent of the ice company. He was injured upon a public highway and while returning from lunch, intending to again punch the time clock and begin the afternoon's work."

"The average weekly wage of James Jones was $17.30; and if the beneficiaries herein are entitled to anything, it would be $10.38 per week for 360 weeks, payable to Mildred Jones and Bernice Jones."

In the light of the evidence, James Jones and other employees were working on the basis of eight hours a day, and were paid for "overtime" work.

Upon his findings as stated above the court made the following conclusions of law:

"I conclude that the said James Jones at the time of receiving the injuries from which he died was injured at a time when he had exclusive control of his actions, and that he did not receive the injuries in the course of his employment by the ice company, and that the terms of the policy did not extend to him. Hence judgment must be rendered for the insurance company, and it is so ordered."

Geo. L. Hamilton and Webb & Webb, all of Sherman, for appellants.

Wolfe, Freeman & Wolfe, of Sherman, for appellee.

LEVY, J. (after stating the facts as above). To come within the term "injury received in the course of employment," as defined by the Workmen's Compensation Law, it must appear that the "injury" (1) was one "having to do with and originating in the work" of the employer, and further (2) that it was "received" by the employee "while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Article 5246—82, pt. 4, Rev. Stat. of 1920. Stated in another way, the law means to allow compensation to an employee who suffers an injury under the following circumstances, and regardless of whether it happens on the employer's premises or elsewhere: (1) Where the injury arises out of or is actually caused by the special work or job for which the employee was engaged, provided it happened or was received by the employee during the period of working hours or time required or authorized by the terms of the contract of employment; or (2) where the injury has relation to the work for which the employee was engaged, provided it happened or was received by the employee during the period of time that such employee was required or authorized by the terms of the contract of employment to be actually about or in furtherance of his employer's work or business. The determination of whether an injury does so arise is dependent upon whether or not the facts bring a given case within the purview of the act.

In the case before us the controlling questions arising for determination are: (1) Does the fact that the employee suffered injury at the noon hour while returning to his work along a public highway in the employer's conveyance affirmatively show that such employee did not receive his injury while acting in his capacity as employee? Or (2) does the particular fact that the employee suffered injury while going to his work, while being transported in his employer's conveyance by consent or acquiescence of the employer, bring the case within the purview of the law?

The employee here has employed on the basis of an eight-hour a day work with pay for overtime, and was allowed an intermission of an hour at noon for his meal and recreation. He had worked all the forenoon on the special work for which he was engaged, and had gone to his home at the noon hour with the expectation, both of himself and of his employer, to return and be on the premises to commence or resume the actual work by 1 o'clock. The fact that the injury happened on a public highway, several blocks from the employer's premises, would not be a fact of itself controlling the decision of the case, for the law, as above stated, does not provide that the injury shall happen only on the employer's premises. It can happen "elsewhere," as provided, and be within the terms

of the law. And the fact that the injury happened at "the noon hour" would not be, in view of the other circumstances, a fact of itself controlling the decision of the case. In the circumstances, the continuity of the employment was not in fact broken by the interval of the noon hour. In order to do the special work which the deceased was employed to do, it was a necessary act on the part of the deceased to return to the premises of his employer by or before the expiration of the noon hour. In order to do the special work which the deceased was employed to do, it was a necessary act on the part of the deceased to return to the premises of his employer by or before the expiration of the noon hour, and he was actually doing that very thing at the time of the injury. He was returning to the premises solely for the purpose of doing the same work that he had been doing in the forenoon, and it was not for purposes purely of his own that he was on the highway, nor was he at the time doing or performing any act or service pertaining to himself or his pleasure, dissociated from his employment. His act of "returning to his work" was manifestly an act actually about and having direct actual relation to the work for which he was engaged.

It has been determined that within the meaning of the Compensation Acts the period of employment does not necessarily cease with the actual performance of the special work or during the interval of the noon hour allowed for meals and recreation. 4 Neg. and Comp. Cases Anno. p. 119. The reason of the rule so laid down is that an employee is entitled to do, and therefore employed to do, such act as returning to the employer's premises to resume the actual work, because both parties contemplate that such act shall be done. In the facts there is evidence of the fundamental difference in the actual relation of employer and employee between the instant case and the case of American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949. In the Dinkins Case the employee had finished his day's work and had left his employer's premises to go to his own home for the remainder of the night, and was not to return to pursue his labor until 8 o'clock the next morning. Dinkins was injured, it is clear, as held by the court, at a time when he was neither about nor in the furtherance of his employer's work or business. Moreover, it appears in the instant case not only that the deceased was injured "while returning" to resume his work, but "while being transported in the employer's conveyance" for the purpose of resuming his special work. The rule is general, and has been applied in this state, that where an employee is to work at a certain place and is transported to and from such place by the employer as a part of the contract of employment, the period of service continues during the time of transportation, and the relation of employer and employee exists during that time. Western Indemnity Co. v. Leonard (Tex. Com. App.) 248 S. W. 655; In re Donovan, 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C, 778. In the Leonard Case, supra, it is true that the employee was being transported to his work as a part of the consideration of employment, and in that respect it differs from the instant case. The relation of employer and employee would nevertheless exist, it is believed, during the transportation of the employee by the employer to the place of work, whether that transportation was a part of the consideration of employment or done by consent of the employer as incident to the service the employee was to perform. As a test applied to determining when a person is an employee and when a passenger, the general rule may be said to be that where an employee is being carried by his employer in the conveyance of the latter to and from the work for which the employee is employed, such employee is regarded as an employee; but if he is being carried merely for his own convenience, pleasure, or business, he is then a passenger. Thomp. Carr. Pass. 46, § 6; Russell v. Ry. Co., 17 N. Y. 134; Vick v. Ry. Co., 95 N. Y. 267, 47 Am. Rep. 36; McGuirk v. Shattuck, 160 Mass. 45, 35 N. E. 110, 39 Am. St. Rep. 454.

In the instant case the auto truck, as found by the court, was used by the "permission" or consent of the employer as a means of transportation of the deceased, as well as other employees, to and from the place of their work. Such transportation was, as found by the court, provided by the employer for the "accommodation" or convenience of the employees, and it was in no way obligatory upon any employee to go or return in the auto truck. While the employees were not required to use the auto truck, still the inference from the facts is that it was only by virtue of working as employees that they were in fact permitted to use the truck as a means of conveyance to and from their work. Evidently the ice company was not carrying the employee without regard to the relation between them created in their contract, but was doing so because of that relation and on account of their contract. It could be fairly said in the evidence that it was arranged between the ice company and the deceased that the latter would thus go and come with his fellow workmen, thereby expediting the work with greater convenience for all concerned. The deceased was doing something for his employer when and by riding in the conveyance provided by the employer for the more convenient carrying forward of its service, even though at the same time the employee was participating in a privilege which he could have foregone without neglect of his

service. The transportation was connected with the employment. We quote the following from Bowles v. Indiana Ry. Co., 27 Ind. App. 672, 62 N. E. 94, 87 Am. St. Rep. 279:

"In the case before us the conveyance of the plaintiff and his fellow workmen by the employer was for the mutual convenience of the parties, no compensation being rendered or required. The transportation of the laborers was one of the means by which the employer procured the doing of the work. In view of the migratory character of the service, such transportation facilitated the prosecution of the work, and was beneficial to both employer and employees. It was, by the conduct of the parties, if not by their express agreement, an ingredient and instrumentality of the employment. It can hardly be said that the plaintiff was not in the employment of the defendant, while so riding, in both a legal and popular sense. Such conveyance seems to have been contemplated by the parties as a matter within the regular course of the employment."

In the case of Kirby Lumber Co. v. Scurlock (Tex. Sup.) 246 S. W. 76, the employee was using the track of the tramroad as a means of access to and exit from the sawmill by consent and acquiescence of his employer; and the Supreme Court held that the relation of master and servant existed, and that the injury grew out of the employment when such employee was killed by the employer's train while so using the tramroad, at a point about 1½ miles from the mill, while traveling home. That case would seem to be authority, we think, in respect to the fundamental principle determined, for this case, so far as using the auto truck is concerned.

The legal effect attaching to all the facts found by the trial court is, we think, to allow a recovery by the beneficiaries of the compensation provided for.

The judgment of the district court is therefore reversed, and the award made by the Industrial Accident Board is sustained, and judgment is accordingly so entered. The costs of the trial court as well as of this court are taxed against the appellee.