JOHN OMAN, JR., v. MRS. LILLIAN DELIUS.

Middle Section.   December 6, 1929.

Both writs denied by Supreme Court, March 1, 1930.

468

Manier & Crouch and Jeff McCarn, all of Nashville, for plaintiff in error.

Stokes & Stokes, of Nashville, for defendant in error.

DeWITT, J.  On July 4, 1927, in the afternoon, Joe Delius, the husband of the defendant in error, was fatally injured by the over-turning of a truck on which he was riding, belonging to the plaintiff in error and driven by Ed Peake, one of his employees.  This suit was instituted by his widow for the benefit of herself and her two children as a common-law action, against John Oman, Jr., to recover damages for the death of her husband, upon the ground of negligence of Peake, the agent and servant of Oman, while in the course of his employment, as the proximate cause thereof.  Upon a trial the jury awarded to the plaintiff the sum of $12,000.  A motion for new trial was made and overruled, and an appeal in the nature of a writ of error has been prosecuted to this court.  In six assignments of error the rulings of the Circuit Judge upon questions of evidence are chal-lenged; and the other twenty-one assignments of error, though vari-ously stated, raise three propositions as grounds for reversal of the judgment and dismissal of the suit.

The first proposition is that this action could not be maintained as a common-law action because both Delius and Oman were subject

to the provisions of the Workmen's Compensation Act, and Delius met his death while in the employ of Oman by accident "arising out of and in the course of employment."

It is undisputed that Delius was under employment by Oman as a truck driver, and that Oman had complied with the provisions of the Workmen's Compensation Act (chapter 123, Acts of 1919 and the amendments thereto); but it was specially pleaded that the injury resulted from "accident arising out of and in the course of employment," as required by section 1 of said Act, as a basis for compensation therein provided.

If the averments of this plea were true, the plaintiff's sole right was to such compensation and not to damages in an action based upon the common law.

The Circuit Judge overruled the motion of defendant, made at the conclusion of all the evidence, that he direct the jury to return a verdict for the defendant. This motion was based on the grounds (1) that the parties were governed by the Workmen's Compensation Act, (2) that the injury resulted from the negligence of a fellow-servant while in the course of employment, and (3) that Delius assumed the risk and was guilty of contributory negligence barring the action. But the issue as to application of the Workmen's Compensation Act was not submitted to the jury, and the Circuit Judge determined this issue himself upon the preponderance of the evidence as he viewed it. When he overruled the motion for peremptory instructions he was asked by counsel for defendant if he would give no instruction at all to the jury upon this subject of Workmen's Compensation, and he answered that he would not. This defense was not referred to in the charge nor was the court requested to give any instructions relating to it. No assignment of error is clearly predicated upon any want of power in the Circuit Judge to determine this issue, but it is insisted that he should have granted the motion for peremptory instructions. It is insisted that he erred in holding that the rights and liabilities of the parties were not governed by the Workmen's Compensation Act.

The controlling rules upon this subject are stated in Norwood v. Tellico River Lumber Co., 146 Tenn., 688, 244 S. W., 490, 24 A. L. R., 1227, in a quotation made with approval from Harrison v. Central Const. Corp., 135 Md., 170, 108 Atl., 874, as follows:

"When the injury occurs before the beginning or after the termination of the work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee while on his way to work is not in the course of his employment. The second is that where the workman is employed to work at a certain place, and as a part of his contract of employment there is an

agreement that his employer shall furnish him free transporta-
tion to or from his work, the period of service continues during
the time of transportation, and if an injury occurs during the
course of transportation, it is held to have arisen out of and in
the course of the employment.''

In McClain v. Kingsport Imp. Corp., 147 Tenn., 130, 245 S. W.,
837, it was held, applying this second general rule, that where an
employee, riding to his work on a horse furnished by his employer
to ride to and from his place of work was fatally injured, when the
horse took fright at a passing train, the injury arose out of and in
the course of his employment within the Workmen's Compensation
Act, though the employee was in immediate control of the horse. The
suit was brought to recover compensation provided by the Act. In
the Norwood case it was held that where the employer, as a part of
the contract of employment, permitted employees going to and from
their work to ride free on logging trains running between a town and
the employer's logging camp, and an employee, who left his home at
the camp Saturday afternoon, after working hours, for purpose of
visiting his father in town, was injured by the lurching of the train
while returning to camp Sunday afternoon, his injury did not arise
''out of and in the course of employment,'' within the Workmen's
Compensation Act, the trip being personal, and therefore the statute
could not be invoked to defeat recovery in a common-law action.

The plaintiff's husband, Joe Delius, resided in the City of Nash-
ville. The defendant Oman was engaged in the performance of a
contract for rebuilding of the Murfreesboro highway near LaVergne,
about fifteen miles from Nashville. Both Delius and Ed Peake, the
driver of the truck which overturned and killed Delius on the after-
noon of July 4, 1927, were regularly in the employ of Oman, as truck
drivers, and had been for some time prior to the accident—the trucks
which they were employed to drive being used for hauling material
for concrete construction in connection with the rebuilding of the
highway. On Friday evening, July 1st (as testified by Ed Peake),
or on Saturday evening, July 2nd (as testified by Mrs. Delius),
Peake and Delius left the place of their employment and came to
Nashville, where both lived, in one of Oman's trucks driven by Peake.
This truck required certain minor repairs and Peake was instructed
by Oman's foreman to leave it at the Mack Garage in Nashville for
such repairs and to have it back at the place of work ready for be-
ginning work at five o'clock a. m., on Tuesday, July 5th. As Delius
was leaving with Peake, the foreman, Fleming, asked Delius to find
another truck driver and to bring him back with him. Mrs. Delius
testified that her husband was at home on Monday, July 4th, ''until
he got ready to go to work at noon,'' when he left home ''for that
purpose.'' She said, ''they were going to leave that evening to be

there the next morning at five o'clock." Delius found a man named Dority at 815 Third avenue South, and Dority agreed to go out with him to the place of work for the purpose of securing a position as truck driver for the defendant Oman. Delius and Dority then went to Ed Peake's home where they found Peake and the truck belonging to Oman, and all three of them started on the truck for Lavergne, with Peake driving the truck. When they were on the Antioch Pike several miles from the city, the accident occurred.

Mr. Oman had given to his employees a holiday, it being the fourth of July; but Delius and Peake were under instruction to be at the place of work, ready to begin work, by five o'clock the next morning.

In disposing of the motion for peremptory instructions, the Circuit Judge stated his conclusions as follows:

"Although the court is of the opinion, from a preponderance of all the evidence in the case, that the contract of employment between the defendant John Oman, Jr., and the said Joe Delius, deceased, provided for the transportation of the said Joe Delius to and from his work, the court, notwithstanding this, holds that the preponderance of all the evidence shows that the said Delius was not returning to his work at the time of this accident on Monday, July 4, 1927, but that all of the evidence is to the effect that that was a holiday, and the work was not to be commenced until the next morning. Therefore the court holds that the accident did not occur while the said Delius was in the regular course of his employment. For this reason this ground of the defendant's motion is overruled."

We find no real conflict in the evidence as to the terms of the contract for transportation or as to the injury resulting from accident arising out of or in the course of the employment. We therefore must determine the issue, as a matter of law, upon these facts.

In regard to the contract, there is the statement of Fleming, the foreman, that Oman furnished transportation to the men to and from their work and that the men used it; that Mr. Oman told the men before they left to go on that job that he would furnish them transportation. He set forth the place where this statement was made and the fact that he was present and heard it made by Oman to the men, Delius among them. Mr. Oman was asked and answered as follows on direct examination:

"Q. In employing the men that you had working there, what were the terms of the employment? A. We paid the drivers on the Mack trucks thirty-five cents an hour, and agreed to take them out there and back, we urged the men to get boarding places out there if they could, but when it was necessary to bring them back to town they could use the trucks,

or they could come with Mr. Fleming in a service truck which he had.

"Q. Was that a part of the contract of employment? A. Yes, sir; that is one of the questions asked by men everywhere, 'How am I going to get to the job and back,' and in this case we specifically told them they could come on our trucks whenever they were coming in, or could come with Fleming in his service truck.

"Q. Did you have a service truck coming in and out every day? A. Yes, sir.

"Q. Did the men ride on that truck? A. They did whenever it was necessary for them to go out and in.

"Q. What did you pay Joe Delius, if you remember? A. Thirty-five cents an hour."

On cross-examination he testified as follows:

"Q. He (Delius) had the right, then to ride on any truck that was coming in, if one wasn't coming in, then he had the right to ride with Mr. Fleming, the manager? A. Yes, sir.

"Q. It wasn't obligatory in him to ride in either one? A. No, but it was stipulated that they could ride in it, we would get them out and in.

"Q. It was understood that if the car was coming in, or if Mr. Fleming was coming in, they could ride on it? A. Yes, sir; and Mr. Fleming always came in.

"Q. They had a right to come in either way they wanted to? A. Yes, sir, we didn't confine them to that means."

On further cross-examination he was asked and answered as follows:

"Q. Now let's get exactly as to the agreement that you had with your men, you agreed with them that if there was a truck coming in, they could ride in and out on that, or they could ride in and out with Mr. Fleming, if Mr. Fleming was coming in? A. Yes, sir."

This last question produced much argument on the trial and resulted in Mr. Oman being re-called. It is insisted by counsel for defendant in error that the affirmative answer to this question constituted some evidence that there was no obligation to furnish transportation, but that a mere permission was given to the men to ride in and out on the trucks. It is perfectly clear that there was an agreement that if there was a truck coming in the men could ride in and out on that, or they could ride in and out with Mr. Fleming, if Mr. Fleming was coming in. We do not think that the question was reasonably calculated to produce upon the mind of the witness the impression that it was intended to embody all of the agreement. When Mr. Oman was recalled he was asked and answered as follows:

"Q. Mr. Oman, on your direct, examination yesterday you testified that the contract of employment was that you were to pay 35¢ an hour to the men and to furnish them transportation to and fro? A. Yes, sir.

"Q. On cross-examination, and I am now reading from the record, you were asked this question by Mr. Stokes, and answered yes to it: 'Now let's get exactly as to the agreement that you had with these men. You agreed with them that if there was a truck coming in they could ride in and out on that, or they could ride in and out with Mr. Fleming, if Mr. Fleming was coming in,' and you answered yes to that? A. Yes, sir.

"Q. Were both answers true? A. Yes, sir, both answers were true, but they wasn't all our agreement. If there had been no truck coming in, or if the circumstances were such that Fleming's truck was not coming in, we were still under obligation to get these men back into town, and we would have sent out a truck from Nashville to have brought them in, or some other means of getting them in. That was our understanding with them, and they understood that."

The testimony, therefore, taken as a whole, was to the effect that defendant Oman was under obligation to transport the men back and forth when they wished to be so transported; and it would not have been a reasonable inference from this testimony that nothing more than a mere permission to ride on the trucks had been given. There is no other testimony in the record on this subject. We regard it, therefore, as indisputably shown that it was a part of the contract of employment that Oman would furnish transportation to Delius from Nashville to the place of work and return, as an absolute obligation on his part. It is insisted, however, that the Circuit Judge correctly held that Delius was not returning to his work, but that it was a holiday and the work was not to be commenced until the next morning. We are constrained to conclude otherwise. There is no evidence that these men were merely taking a ride on a holiday. They were taking the truck, and they were going, to the place of work by the method contracted for in order to be ready to go to work the next morning at an hour so early that they could not reasonably be expected to stay in Nashville that night. The rule is that a reasonable margin must be allowed to the workman for the purpose of getting to the premises where his actual work is to be carried on. The moment at which the actual work begins cannot be taken as the moment of the commencement of his employment. In 39 C. J., 272, the rule is stated as follows:

"A master's duty to protect his servant continues so long as the latter may be said to be actually or constructively in his employment and under his control. The duty is not neces-

sarily confined to the precise period during which the services are actually rendered. The relation exists when the servant is on the premises of his master in anticipation of his work, although the actual time of taking up his duties has not arrived, but not where the servant is on the premises unreasonably early and contrary to custon''—citing cases.

The English decisions are in accord, the language of the British Act being the same as ours. Sharp v. Johnson, 2 K. B., 139, 74 L. J. K. B., 566; Hoskins v. Lancaster, 26 Times L. Rep., 482, 7 W. C. C., 28, 53 W. R., 597. Each case must depend on its own facts as to the reasonable interval of time and space during which the employment lasts. It is impossible to reduce. to precise and definite formulae the variations presented by the facts of individual cases. C. J., pamphlet, ''Workmen's Compensation,'' 73. Argument by analogy is of little value. We will, however, discuss cases relied on in support of the conclusion of the Circuit Judge.

Tallon v. Interborough R. T. Co., 232 N. Y., 410, 134 N. E., 327, 21 A. L. R., 1218, was an action against a carrier for the death of an employee through its negligence while riding on a pass before the time for reporting for duty. It was held, three Justices dissenting, that riding on a train of ·a public carrier differed materially from a case where the employer, in order to get his employees to and from their work, provides conveyances exclusively for their use, which in no sense are public conveyances, and in which the employees undertake to ride as part of their contract of employment, in going to and from their work. Such a case was Little v. Geo. A. Fuller Co., 223 N. Y., 369, 119 N. E., 555, where bricklayers employed to build a house two miles from the railroad refused to remain on the job unless furnished with free transportation back and forth, and the employer hired a truck to transport them, which went into a ditch while returning to the station at night, and injured an employee; and it was held that his injuries arose out of and in the course of the employment. The court stated that the day's work began when the employee entered the automobile truck in the morning and ended when he left it in the evening, and further said that the rule was well established that in such a case compensation should be awarded.

In Kowalek v. N. Y., Consol. R. Co., 229 N. Y., 489, 128 N. E., 888, a flagman, after terminating his actual day's work, went upon the passenger platform of the station with the intention of going home on one of his employer's trains, upon which he was permitted to ride without charge, although his contract of employment did not obligate the employer to transport him and a few minutes later he was found dead about two feet from the end of the platform between the third rail and the running rail of the railroad.

The court held that the accident did not arise out of nor was in the course of the employment because the employer was not obligated to transport the employee.

In Schultz v. C. W. & M. Co., 230 N. Y., 309, the employee was fatally injured while using his employer's automobile by mere permission, and not as a part of the contract of employment. So it was held that the injuries did not arise out of and in the course of the employment. The employee, by permission, drove the automobile to his home after finishing his day's work, kept the car over night and started to drive it on the public highway to its owner's place of business. He then received fatal injuries by colliding with another car. The court held that the accident occurred "while he was on his way to his place of work before the time when he was to go to work."

In Strohl v. Eastern Pa. Rys. Co., 270 Pa. St., 132, it was held that the employee of an electric company was not entitled to compensation from a railway company to which the electric company furnished electricity, the quantity thereof being registered and transmitted through two rotary machines installed by the defendant railway company. The plaintiff, while under employment by the electric company, was engaged by the railway company to examine the meters at the end of each day he was working for the electric company, to enter the amounts thus ascertained upon blanks furnished by the railway company, and to deliver them to any conductor of its trolley cars. As a consideration for this, the plaintiff was given an employee's pass, entitling him to ride between his home and the substation. He was injured by the derailment of a car of the railway company, just after he had read the meter and as he was going home. It was held that he was not entitled to compensation; that his connection with defendant's business had been wholly ended; that the pass was not a free pass, but one issued for a valuable consideration, entitling him to claim for any damages suffered by defendant's negligence, exactly as any other passenger was entitled to do. The decision was similar to that in Tallon v. Interborough R. T. Co., supra.

From the multitude of reported cases upon this subject, it appears that whenever the employee is riding to or from his place of work by the method of transportation owned or controlled by his employer and under a contract of employment binding the employer to furnish such transportation, an injury received by the employee from accident under such circumstances is deemed to have arisen out of and in the course of the employment.

This case is unusual upon this question, because a night had to intervene between the arrival of Delius at the place of work and the beginning of the work. The fact that he was paid by the hour

is immaterial. He was under orders to be at the place of work so as to be ready to begin work at a time certain—five o'clock Tuesday morning. When fatally injured he was under these orders and was riding on a vehicle owned and controlled by his employer. His spending the night at the place of work before beginning work would have been but a part of his preparation for, or going to, his work. To deny compensation for an injury received while going on the truck to begin work early the next morning at a place fifteen miles or more from the home of the employee would be to nullify the rule of liability hereinbefore set forth and recognized by our Supreme Court, particularly in the Norwood and McClain cases, supra.

Although this is not a suit for compensation, but a common-law action for damages, this question must be tested and determined under the provisions of the Workmen's Compensation Act, and by the liberality of interpretation as is therein provided (sec. 47), as follows:

"The rule of common law requiring strict construction of statutes in derogation of common law shall not be applicable to the provisions of this chapter, but the same is hereby declared to be a remedial act which shall be given an equitable construction by the courts to the end that the objects and purposes of this chapter may be realized and attained."

See Moss v. Aluminum Co., 152 Tenn., 249, 276 S. W., 1052; Knox v. Washer, 153 Tenn., 630, 284 S. W., 888; Jackson v. Diamond Coal Co., 156 Tenn., 179, 299 S. W., 802.

Were this a suit for compensation, it would, in our opinion, be properly decided by awarding compensation. There cannot be two rules of interpretation here. The sole question is whether or not the sole right was to compensation provided by the Workmen's Compensation Act.

We therefore hold that upon this ground the motion for peremptory instruction should have been sustained.

The second proposition insisted upon by plaintiff in error is:

"Even if the case does not come under the Workmen's Compensation Act, the plaintiff was nevertheless precluded from a recovery at common law by the fact that her husband's death was brought about by the negligence of a fellow servant."

The Circuit Judge applied to this contention the logical effect of his finding that the decedent was not injured in the course of his employment. But we have concluded otherwise. The decedent Delius was a fellow truck driver with Peake, both under a common employment. It is true that the fellow-servant rule does not apply where the servant was not, at the time of the injury, acting in the service of the master; but this is not the status when the servant,

or employee, is being carried, as a part of his contract of service, to or from his place of work in his employer's carriage. In such case the employee is a fellow servant and not a passenger. 39 C. J., 556 and cases cited. In Dishon v. Cincinnati, etc., R. R. Co., 126 Fed. Rep., 198, upon a careful review of the authorities, it was said:

"It is never a test of the application of the fellow-servant doctrine to any given case whether or not the injury was received during working hours or when he was at work after working hours. The sole test of its application is whether at the time of the injury the servant was doing something which it was his duty or he had a right to do under the contract. If he was so acting, the doctrine applies; if not, it does not apply" —citing Northern P. R. Co. v. Charless, 162 U. S., 359, 40 L. Ed., 999; Martin v. Atchinson, etc., R. R. Co., 166 U. S., 399, 41 L. Ed., 1051; Abend v. T. H. & I. R. Co., 111 Ill., 203; L. & N. R. R. Co.v. Stuber, 108 Fed., 934, 54 L. R. A., 696. See also Dayton Coal & I. Co. v. Dodd, 108 Fed., 597, 37 L. R. A. N. S., 456.

This case must be distinguished from a case where an employee of a carrier, when he is off duty, or a stranger riding on a carrier's vehicle, designated for the transportation of passengers, by permission of those in charge, is treated as a passenger, even though no fare is exacted of him. Washburn v. Railroad, 3 Head, 638, 75 Am. Dec., 784; Transit Co. v. Venable, 105 Tenn., 460, 58 S. W., 861; Ry. & Light Co. v. Overby, 143 Tenn., 581, 223 S. W., 996; Harris v. City and Elm Grove Railroad Company, 69 W. Va., 65, 70 S. E., 859, 50 L. R. A. N. S., 706.

In Washburn v. Railroad, supra, the plaintiff, an engineer employed by the defendant, riding free on another train than his own, and on private business not relating to his employment, was held to be then a stranger and entitled to all the privileges he could have had if he had not been a servant; and also, if he had been in the course of his employment he would not have been a fellow servant of the superintendent of transportation whose negligence caused the collision from which the plaintiff received his injuries.

In the Venable and Overby cases the question was whether or not the injured employees were passengers. Venable, a night watchman at the company's depot, was injured while riding on one of its trains to the depot to report his readiness to report for duty the coming night. The issue was whether he was a passenger or a trespasser. The conductor permitted him to ride without a pass or the payment of fare, although he was forbidden to give such permission. The Supreme Court applied the presumption that every one not an employee in the service of the company in running the train, and traveling openly in the coaches upon a passenger train, is a pas-

senger; and it held that the plaintiff's presence on the train by permission of the conductor, to be implied from his knowledge that he was there, and the conductor's neglect to enforce the company's rule by requiring fare or a pass, made the plaintiff a passenger and entitled him to the highest degree of care for his safety.

In the Overby case there was no defense of injury by a fellow servant. Overby, employed by the Railway and Light Company as a collector was thrown to the ground and injured by the sudden and negligent starting of the street car from which he was alighting. He had a pass containing a stipulation that it was to be used at the risk of the person presenting it. He did not use the pass, being allowed to ride because he was known by the motorman to be an employee. Upon the principle applied in the Venable case he was held to be a passenger and entitled to recover.

These were cases of public carriers. In each case the injured servant and the servant negligently causing the injury were in different grades of employment. The instant case is one of an employee injured by the negligence of another employee of an employer while riding upon the private conveyance of the employer as an incident to the employment.

In his exhaustive opinion in Dishon v. C., N. O. & T. P. Ry. Co., 126 Fed. Rep., 194, Judge Cochran, after citing the Washburn case and other cases of employees of public carriers, said:

"It is to be noted that in all these cases the servant would have had a right to ride as he was riding at the time of his injury had he not been a servant at all, and that in the capacity of a passenger. The train or cars upon which he was riding were passenger trains or cars, and upon payment of the proper fare, or without payment, had the master seen fit to waive it, the master would have been bound to transport him as he was being transported at the time of the injury as a passenger, and deliver him safely at his destination. In all such cases, therefore, it is possible that the servant was being transported in pursuance to an independent contract of carriage, and not in pursuance to his contract of employment, or, if he was being transported in pursuance thereto, that it was the intention of the parties thereto that he should be transported as a passenger, with all the rights of a passenger. If either alternative was true, of course the servant had not assumed the risk of the pure negligence of his co-servants, and would be entitled to recover for any injury occasioned thereby; for in the one instance, at the time of the injury he was not doing anything "which he was bound or had a right to do under his contract of employment, and in the other instance, though he was doing that which he did have a right to do thereunder, the intention of the parties was that he should

be transported in the capacity of a passenger, with all the rights of such, which excluded from the contract any assumption of such risk. Now, in all of the cases last referred to and classed together, it will be found, on examination of them, either that the servant.was not being transported in pursuance to the contract of employment, or, if he was, the contract was construed to be that 'he was to be transported in the capacity of a passenger, and not that of a mere servant.''

The learned judge also said that though it may be that the servant is being transported in pursuance of his contract of employment, the contract may be not to transport him in the capacity of passenger, but simply as a servant; that where this is the case, there is an assumption of the risk in question. Upon this subject the learned judge also said:

"In the following cases, to-wit: Gilshannon v. Stony Brook R. Corp., 10 Cush.; 228; Ryan v. Cumberland Valley R. Co., 23 Pa., 384; Northern P. Ry. Co. v. Charless, 162 U. S., 359, 16 Sup. Ct., 848, 40 L. Ed., 999; Martin v. Atchison, T. & S. F. R. Co., 166 U. S. 399, 17 Sup. Ct., 603, 41 L. Ed., 1051; Abend v. T. H. & I. R. Co., 111 Ill., 203, 53 Am. Rep., 616; Ll. & N. R. Co. v. Stuber, 108 Fed., 934, 48 C. C. A., 149, 54 L. R. A., 696—; it was held that servants going to work in the master's vehicles on his premises had assumed the risk of the negligence of co-servants engaged in operating said vehicles or in operating other vehicles with which they collided. In the Gilshannon, Ryan, Charless, and Martin cases the servants were day laborers, riding in the first two on gravel trains, and in the last two on hand cars. In the Abend case the servant was a head blacksmith riding on a wrecking train going to a wreck. In the Stuber case he was a foreman of water supply, riding on a detached engine to a station where his services were required. In the following cases, to-wit: Gilman v. Eastern R. Corp., 10 Allen, 233, 87 Am. Dec., 635; Russell v. Hudson R. Co., 17 N. Y., 134; Northern P. Ry. Co. v. Peterson, 162 U. S., 346; 16 Sup. Ct., 843, 40 L. Ed., 994; Tunney v. Midland R. Co., L. R. 1 C. P., 291—it was held that servants returning from work in the master's vehicles on his premises had assumed such risk. In the Gilman case the servant was a carpenter returning from work at the noon hour, riding on a platform car attached to an engine and tender. In the Russell, Peterson, and Tunney cases the servants were day laborers, riding in the Russell case on a gravel train, in the Peterson case on a hand car, and in the Tunney case on a 'pick up train.' '' In the Tunney case, Willes, J., said:

" 'The circumstance of the day's work being at an end when the accident happened can make no difference, for it

was a part of his contract that he was to be carried by the train to and from the place where his work happened to be.' "In the case of Kumler v. Railroad Co., 33 Ohio St., it was held that a day laborer riding on a gravel train from one place of work to another such place assumed the risk of the negligence of the engineer on said train. In the case of Ellington v. Beaver Dam L. Co., 93 Ga., 53, 19 S. E., 21, it was held that a day laborer about to "mount an engine to return home assumed the risk of the negligence of the engineer thereof. In the case of McQuirk v. Shattuck, 160 Mass., 45, 35 N. E., 110, 39 Am. St. Rep., 454, it was held that a laundress going to the master's place of business in his wagon on the public highway assumed the risks of the negligence of the driver, thereof."

In a note on page 463 of 50 L. R. A., the learned annotator says: "It is now well settled by the great weight of authority that, for the purposes of the defense of common employment, a servant, although not actively engaged in work, continues to be a servant during the period of his transportation on a vehicle operated by his employer, where the express object of so transporting him is to bring him more quickly and conveniently to his place of work—citing, as leading cases, McQuirk v. Shattuck, 160 Mass., 45, 35 N. E., 110; and Bartonshill Coal Co. v. McGuire, 3 Macq. H. L. Cas., 308, 4 Jur. N. S., 773."

The rule of the Shattuck case was applied in Chekatonskay v. Henderson, 190 N. Y. S., 586, in which it was held that a laundress conveyed in her employer's automobile from her place of work to her home, as a part of her contract of employment, was a servant, and could not recover from her employer for injuries caused by the chauffeur's negligence. These cases are at least apposite upon the question of injury while in the course of the employment; and in the case before us the negligent employee and the deceased employee were in the same grade and department of service.

In view of this rule, applied so often and by learned courts to similar circumstances, we hold that Delius was fatally injured through the negligence of a fellow servant; and that even if the Workmen's Compensation Act did not apply, the plaintiff was not entitled to recover upon the undisputed facts; and the motion for peremptory instructions should have been sustained on this ground.

The third proposition relied upon for the defendant is that the decedent, at the time of his death, knew that he was riding in a truck with a drunken or reckless driver, which fact was unknown to the defendant and of which fact the decedent had a better opportunity to know than did the defendant; and the decedent thereby assumed the risk and was guilty of such contributory negligence as to bar a recovery.

Upon this issue there was a conflict in the testimony. There is some testimony that Peake, the driver, was drunk and that Delius knew it; but there is the testimony of Peake and another witness that he was not drunk; and the testimony of two other witnesses tending to show that he was not drunk. The jury evidently believed them. There is testimony of persons living in the neighborhood of the place of the casualty that Peake was driving the truck in a very negligent and dangerous manner shortly before the accident, but Dority, who was in the truck, testified that Delius protested against this manner of driving. There is evidence from which the jury could reasonably infer that Delius remonstrated and gave warning. This was a matter for the jury to determine. Dedman v. Dedman, 155 Tenn., 241, 291 S. W., 449, and cases cited.

The Circuit Judge could not properly have sustained the motion for peremptory instructions on this ground of contributory negligence and assumption of the risk. It results, however, that the judgment of the circuit court must be reversed and the suit dismissed.

The assignments of error as to rulings of the Circuit Judge upon the competency of testimony submitted will now be treated and disposed of.

The court allowed the plaintiff, Mrs. Delius, to testify that she could not look after her two children and work, and that she had to let her children go to Knoxville to be with their grandmother. This evidence was really immaterial. We are unable to see that the admission of it affected the verdict of the jury.

The court overruled the objection by defendant to testimony of the witness Eph George, father of Mrs. Delius, to the effect that he had a conversation with Mr. Oman in which Mr. Oman told him to tell his daughter that "if there was anything he could do for her she was to come up to his office and anything in his power he could do he would do." The witness said he did not know whether or not it was John Oman, Jr., but that the man with whom he talked said that he was Mr. Oman. It appears that defendant John Oman, Jr., has a son, Stirton Oman, who was in business with him at the time. The objection is that the statement made by Mr. Oman might be construed as an admission of liability and that is was not proved that the person who made the statement was the defendant John Oman, Jr. We do not think that the language quoted amounted to an admission of liability, even if it was uttered by the defendant, John Oman, Jr. The admission of this testimony in our opinion did not constitute reversible error. Mrs. Delius testified that when her husband left home she did not smell any whiskey on his breath. This was objected to on the ground that defendant was not undertaking to prove that he was drinking when he left home, but that he drank some liquor that afternoon. In view of this objection and in view

of this statement, the testimony was immaterial and could not have affected the verdict of the jury. The jury must have understood that it was not a question whether Delius had taken any drinks before he left home, but whether he drank some liquor after he left home.

The witness Boone Peake was asked the question:

"Before this time what were Ed's habits with reference to drinking?"—referring to Ed Peake, the driver of the truck. Defendant's counsel objected to the question on the ground that it was not competent to show his habits in this way. The court ruled on the objection by saying, "Put it on the same basis as you did the widow, if he knew his character for sobriety." Neither this question was renewed, nor was this witness asked if he knew the general character of Ed Peake for sobriety. Therefore no testimony was given upon the subject of the habits or the character of Ed Peake for sobriety. The witness did testify that Ed Peake did drink; but not that he had a reputation for drinking or for being strictly sober.

The witness, Bob Briley, who was at the scene of the accident shortly after it occurred, was allowed to testify, from his observation of Ed Peake as follows:

"Q. Did you see anything, hear him say anything, or see him walk in any way that made you think that the truck driver was drunk? A. No."

It was not error to admit this testimony. The witness was present, saw the truck driver, observed his appearance, manner and demeanor, and it was competent for him to testify therefrom as to his exhibiting any signs of being drunk or under the influence of liquor. The question really went to the existence of any facts constituting evidence of drunkenness.

These assignments of error upon the rulings of the Circuit Judge upon testimony are therefore overruled.

For reasons hereinbefore set forth, the judgment of the circuit court is reversed, the verdict set aside and the suit is dismissed at the cost of the defendant in error.

Faw, P. J., and Crownover, J., concur.